Willie B. JONES et al.,
Plaintiffs-Appellants,

v.

TRI–COUNTY ELECTRIC COOPERA-
TIVE, INC., Defendant-Appellee.

No. 74–1991.

United States Court of Appeals,
Fifth Circuit.

April 25, 1975.

Kent Spriggs, Tallahassee, Fla., Jack Greenberg, Legal Defense Fund, Morris J. Baller, Marilyn Holifield, New York City, for plaintiffs-appellants.

Ernest M. Page, Jr., Madison, Fla., for defendant-appellee.

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge.

In December, 1971, Willie B. Jones, James A. Ealy, and John C. McGhee, appellants herein, applied for jobs with Tri-County Electric Cooperative, Inc., a member owned co-operative public utility engaged in the distribution of electric power to rural consumers. All three appellants are black residents of Madison County, Florida. The appellants were not hired. When, without telling them of the openings, Tri-County filled two vacancies in January and February of 1972 appellants filed a class action suit,

42 U.S.C. § 1981, alleging racial discrimination, seeking back pay, attorneys' fees, and an injunction to prohibit further racial discrimination in employment.

After a bench trial, the District Court found no racial discrimination in either the rejection of the appellants or in defendant's hiring or job assignment practices. It denied appellants' request for an injunction and other relief. On appeal, appellants contend that the evidence does not support these findings. Upon the record, briefs, and oral argument we agree. We reverse and remand for a new trial on all issues, including the question of attorneys' fees.

Tri-County provides electric power to the rural portions of Jefferson, Madison, and Taylor Counties in Florida. As already indicated, it is a co-operative, non-profit, membership corporation, owned by its member-consumers. It maintains a complement of fifty employees. At the time suit was filed, in March, 1972, only one of the fifty was black, and he was employed as a janitor.

In its original posture, appellants' complaint purported to represent a class composed of "all present and potential black employees and applicants for employment at the facilities operated by defendant and all black former employees discharged because of their race". Prior to trial, the District Court held that appellants did not represent present or past black employees [there was only one] and conditionally allowed them to continue, limiting their representation to a class composed of "past, present, and future applicants for employment".

Section 2000e et seq., 42 U.S.C. (Title VII of the Civil Rights Act of 1964), was approved by the President July 2, 1964. Nevertheless, between that date and 1971, only one black person had applied to Tri-County for employment, resulting in being hired as a janitor.

Between January 1971 and September, 1973, there were twenty-three black applicants, of whom eight were hired. In the same time period, 159 whites applied, of whom thirty-five were hired. Thus, as the District Court pointed out, 24% of all the applicants were hired. 34% of the black applicants were hired; 22% of the white applicants were employed. This is an instance, however, in which percentage statistics, standing alone, fail to convey the full picture.

First, the organization had employed only one black person during the first seven years the Act was in effect. Second, regardless of the percentages, with this past history of non-black employment, after this lawsuit was filed the Cooperative hired eight black persons while hiring thirty-five white individuals.

In view of circumstances existing at the time of the filing of this suit the percentage of the *applicants* of either race hired is irrelevant. The statistics which the Courts have always considered is the racial composition of the employer's work force as compared to the percentage of the minority population in the employer's service area. Here the three counties served by the defendant had a population which was approximately 40% non-white; before the suit was filed there was one black employee, at no time following the filing of this suit did the employer ever maintain a work force of more than about 10% non-white. While a total of eight black applicants were hired and at some time actually worked for the defendant, it should be noted that no more than four of these ever worked for the defendant at any one time. The record shows that four of the blacks hired filled a single position at one time or another on the Perry ground crew, while two others were successive holders of a single position on Madison Crew No. 1. Further, of the nine blacks hired in the history of the company, only four were employed at the time of trial.

Moreover, the record is devoid of affirmative steps to eradicate the effects of past discrimination. The employer appears to have promulgated or publicized no objective, employment-related

criteria for hiring, regardless of the race of the applicant.

The General Manager of Tri-County testified that in the six months following appellants' applications, ten people were hired,[1] four of whom were black. One of them never reported to work.

Burnett gave the following explanation as to why the six whites employed were given preference over the appellants:

| White Person Hired | Date | Position | Reason Preferred Over Appellants | Prior Electrical Experience |
|---|---|---|---|---|
| E. Desmore | 12/28/71 | Lineman | Lived in Jefferson County | None |
| D. Coker | 1/31/72 | Groundman | I knew him personally, experienced with electric motors | None |
| S. Tackett | 2/3/72 | Office Clerk | Experience as Draftsman | None |
| R. Anderson | 5/72 | Sprayer & Driver | Had chauffeur's license | None |
| L. Parker | 6/9/72 | Serviceman Helper | Married, willing to stand by at night | None |
| S. Reney | 6/23/72 | Linecrew Helper | Neat handwriting | None |

▇▇▇ Of course, disparities in the employment of black and white employees may be justified by proper business necessity, Bolton v. Murray Envelope Corporation, 5 Cir., 1974, 493 F.2d 191, 196, rehearing en banc denied 495 F.2d 1372 (1974). But the above testimony is innocent of such justification.

We now turn from the general employment situation to the circumstances appertaining to the appellants.

The record shows that when McGhee applied to Tri-County he had just been discharged from the Air Force, where he was trained as an aircraft mechanic and in the ground installation and maintenance of electrical wiring systems. He was a high school graduate with 15–20 quarter hours of academic work through correspondence. While waiting for Tri-County to pass on his examination, he enrolled in North Florida Junior College.

Jones is a high school graduate with no prior electrical work experience. Ealy is a high school graduate who appears to have gained experience while in service installing and maintaining telephone wires.

The District Court found Tri-County innocent of any Title VII violations, apparently in reliance on the favorable percentage statistics achieved after this litigation was filed. The factors hereinabove discussed so severely disarm the statistics, in fact, so completely contradict their ordinary impact, that the case must be remanded for a full rehearing on all issues, under appropriate standards, with resolution accordingly, including the matter of attorneys' fees.

See, e. g., Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Pettway v. American Cast Iron Pipe Company, 5 Cir., 1974, 494 F.2d 211; Bolton v. Murray Envelope Corporation, *supra.*

Reversed and remanded for further proceedings not inconsistent herewith.

1. In addition to this ten there were employed an electrician and a secretary—jobs which the general manager apparently assumed none of the class represented by the appellants would be qualified to fill.