**Marianna T. HAYKEL**

v.

**G.F.L. FURNITURE LEASING COMPANY.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**G.F.L. FURNITURE LEASING COMPANY.**

**Civ. A. Nos. 75–276A, 75–1751A.**

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 16, 1976.

Margie Pitts Hames and Mary Ann Oakley, Atlanta, Ga., Earl Harper, Jr., Gerald S. Kiel, Beverly G. Agee, E. E. O. C., Atlanta, Ga., for plaintiff in Civ. A. No. 75–276A.

Neal H. Rayl, Heyman & Sizemore, Atlanta, Ga., R. Lawrence Ashe, Jr., Donald R. Stacy, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant in Civ. A. Nos. 75–276A and 75–1751A.

Abner W. Sibal, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, E. E. O. C., Washington, D. C., Earl Harper, Jr., Acting Regional Atty., Gerald S. Kiel, Asst. Regional Atty., Beverly G. Agee, Trial Atty., E. E. O. C., Atlanta Regional Litigation Center, Atlanta, Ga., for plaintiff in Civ. A. No. 75–1751A.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action for discrimination in employment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Equal Pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d). Plaintiffs pray for injunctive relief, back pay, and other equitable relief due to defendant's alleged unlawful employment practices. The action is presently before this court on: (1) plaintiffs' motion to compel production of certain documents; (2) defendant's motion for a protective order; (3) defendant's motion to compel production of certain documents; (4) defendant's motion to vacate the order of consolidation; and (5) defendant's motion for leave to file an amended answer. The instant motions will be considered seriatim. At this juncture, a brief review of the salient facts is appropriate.

Plaintiff Haykel, the original charging party, alleges that she was denied promotion into a senior sales position or into a management training program when males with less seniority and experience were so promoted. Plaintiff allegedly discussed her situation with defendant's management several times, but received no satisfactory explanation of the defendant's failure to promote her to a higher position. Finally, on July 14, 1972, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission [hereinafter the "E.E.O.C."]. Thereafter, on July 19, 1972, plaintiff was terminated purportedly because of a personality clash between plaintiff and a male employee. Plaintiff followed the appropriate administrative channels and finally filed suit in this court on February 14, 1975.

Plaintiff E.E.O.C., which had investigated and conciliated plaintiff Haykel's claim, brought an independent action in this court against defendant G.F.L. Furniture Leasing

Co. [hereinafter "G.F.L."] on February 14, 1975. Plaintiff E.E.O.C. alleged *inter alia*[1] that G.F.L. had engaged in discrimination on the basis of race and sex with respect to its hiring and promotional policies.

On October 6, 1975, the E.E.O.C. moved to consolidate its action and plaintiff Haykel's individual action. Defendant's counsel obtained several extensions of time within which to respond to plaintiff's motion, but never in fact filed such a response. Defendant now contends that his failure to respond was due to what he believed to be the imminent settlement of this action. In any event, on March 10, 1976, this court ordered plaintiff Haykel's action and the E.E.O.C. action to be consolidated.

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION

■ Plaintiffs move this court to require defendant to produce certain documents pertaining to applications and/or personnel files of employees, applicants and ex-employees employed by defendant in submanagement positions at defendant's affiliated stores in Nashville, Chicago, Corpus Christi, and Houston. Plaintiffs contend that the scope of this suit should include submanagement positions at the non-Atlanta facilities. Moreover, plaintiffs aver that their initial discovery efforts have revealed that defendant's allegedly discriminatory conduct in its personnel selection in Atlanta has had certain prenumbral effects in submanagement as well as management level jobs in defendant's non-Atlanta facilities. Finally, plaintiffs argue that since defendant selects the "branch" managers at the Atlanta facility, discriminatory conduct at the branch facilities is attributable to personnel decisions made at its home office in Atlanta.

Defendant in turn argues that the E.E.O.C.'s investigation only concerned the Atlanta facility and that plaintiffs now seek to extend the scope of this action improperly after the time for such expansion has passed. Moreover, defendant vigorously contends[2] that each of defendant's stores make their own hiring and firing decisions without formal or informal advice from the Atlanta store. Therefore, on the authority of *Joslyn Dry Goods v. Equal Employment Opportunity Commission,* 483 F.2d 178 (10th Cir. 1973), defendant argues that limitation of discovery to the Atlanta facility is appropriate.

■ At the outset, it is important to note that plaintiffs' requested discovery presented some rather unusual circumstances. It is well settled in this circuit that the E.E.O.C. may expand the scope of an action beyond the parameters of the original charge. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970) (scope of judicial complaint is limited to scope of Equal Employment Opportunity Commission investigation which can reasonably be expected to grow out of a charge of discrimination). However, the instant action presents the question of whether information may be discovered at the litigation stage concerning purportedly independently operated facilities belonging to the defendant when no clear mention[3] has been made of those

---

1. In pertinent part the E.E.O.C.'s complaint stated that: "[defendant's] unlawful practices include but are not limited to the following:
   (a) Failing to hire because of race;
   (b) Failing to promote because of sex;
   (c) Failing to hire because of sex;
   (d) Discharging females because of their sex;
   (e) Failing to train because of race and sex;
   (f) Maintaining race and sex segregated job classification[s];
   (g) Failing and refusing to take appropriate affirmative action to eliminate its discriminatory employment policies and practices and to correct the effects of past discrimination against blacks and females.

2. Defendant supports these contentions with the affidavit of Mr. Millard Coghlan, President of G.F.L.

3. The original charge only mentioned the Atlanta facility. In addition, the original E.E.O.C. complaint in pertinent part stated that the company "has intentionally engaged in unlawful employment practices at its *Atlanta facility.* However, in its prayer for relief, the E.E.O.C. requested that the court order *the company* to refrain from given activity. Therefore, the question of whether the E.E.O.C. intended to proceed against the company as a whole or only against the Atlanta facility remains somewhat unclear.

facilities at the investigation, conciliation, or pleading stages of the administrative/judicial process.

■ While it is clear that the Fifth Circuit Court of Appeals has encouraged liberal discovery in Title VII actions, *see, e. g., Georgia Power Co. v. E. E. O. C.*, 412 F.2d 462 (5th Cir. 1969); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973), it is equally clear that the material sought must comport with the traditional discovery notions of relevancy and must not impose an undue burden upon the responding party. *See* G. Cooper, H. Rabb, and H. Rubin, *Fair Employment Litigation* (1975).

In a case very similar to this one, the Tenth Circuit Court of Appeals held on relevance grounds that the E.E.O.C. was not entitled to discover certain information about six other stores in defendant's chain when the charging party allegedly had been discriminated against by the seventh store and the plaintiff could not refute defendant's affidavit stating that there were no central personnel files or chain-wide hiring policies common to all the stores. *Joslin Dry Goods Co. v. Equal Employment Opportunity Commission*, 483 F.2d 178 (10th Cir. 1973). While we do not disagree with the reasoning in the *Joslin* decision, there are certain distinguishable facts herein which make *Joslin* inapposite. In the instant action there is some evidence that salary records are centrally held by the Atlanta facility and that the Atlanta facility is responsible for appointing managers of the outlying stores. Notwithstanding President Coghlan's somewhat conclusory affidavit, these factors tend to suggest informal involvement if not "policy making" by the Atlanta office. At a minimum, the E.E.O.C. should be entitled to conduct discovery so as to be in a position to controvert defendant's "no central policy making" allegation. Accordingly, we conclude that the documents which the E.E.O.C. requests are relevant. *Foster v. Boise Cascade, Inc.*, 10 F.E.P. 1287 (S.D.Tex.1974) (discovery as to nationwide corporate structure of defendant was proper because evidence of discrimination would justify the granting of an injunction to cover the breadth of geographically proved discrimination and because there was evidence of transfer of managerial personnel between defendant's plants); *Brennan v. J. M. Fields, Inc.*, 488 F.2d 443 (5th Cir. 1973).

■ In addition, we believe that the burdensomeness question bears brief consideration. Since pertinent portions of defendant's records are not kept in one location, production of the documents which plaintiffs request may be somewhat burdensome even though the total number of people employed by defendant only numbers seventy. In order to avoid any undue burden, it is appropriate for defendant to simply produce the relevant documents for inspection at the respective branch locations. *See* Rule 33(c), Fed.R.Civ.P.; 42 U.S.C. § 2000e–8(a).[4] Furthermore, the defendant is entitled to a protective order prohibiting the E.E.O.C. from distributing material outside the agency during the pendency of this litigation and requiring the E.E.O.C. to return all documents and copies of documents discovered under this order at the close of the instant litigation. *Chrysler Corp. v. Schlesinger*, 412 F.Supp. 171 (D.C.Del.1976). Finally, to the extent that as a result of such discovery the E.E.O.C. should desire to broaden the scope of the instant litigation, it would be incumbent upon the E.E.O.C. to first conciliate additional claims and, thereafter, seek leave of court to amend the complaint *sub judice*. *See generally, Equal Employment Opportunity Commission v. Federated Mutual Insurance Company*, C.A.No.75–1925A (N.D.Ga. Sept. 29, 1976, O'Kelley, J.). Accordingly, with the reservations herein-

---

4. In pertinent part, this section provides that: In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

above expressed, we hereby GRANT plaintiffs' motion to compel the production of documents and GRANT defendant's motion for a protective order.

## DEFENDANT'S MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS

■ Defendant seeks to discover all conciliation material in the E.E.O.C. file. Defendant supports its motion by arguing: (1) that the material in question is not privileged in evidentiary terms; and (2) that defendant does not seek judicial review concerning the conciliation negotiations but rather seeks information concerning the Commission's alleged failure to comply with its own regulations. See 29 C.F.R. § 1601.-23. The plaintiffs argue inter alia: (1) that discovery must be confined to whether the Commission attempted conciliation and whether it was unable to obtain an agreement acceptable to it; (2) that conciliation efforts are privileged and inadmissible as evidence; and (3) that the Commission's determination that it cannot procure a conciliation agreement is not subject to judicial review.

The defendant cites two cases as being central to the proposition that conciliation material is discoverable; however, H. Kessler and Company v. Equal Employment Opportunity Commission, 472 F.2d 1147 (5th Cir. 1973) is clearly inapposite. In Kessler the Court of Appeals held that factual information concerning the merits of a charge was disclosable to the parties prior to the commencement of litigation for the purpose of allowing the parties to fully assess the merits of their relative positions in light of all the evidence which had been compiled. The policy reasoning behind this holding has little application to the instant situation in which after the election to commence litigation has already been made, one party seeks to discover all available material concerning conciliation negotiations.

The second case on which defendant places considerable weight is likewise inapposite. In E. E. O. C. v. Raymond Metal Products Co., 530 F.2d 590 (4th Cir. 1970),

the court held inter alia that the Commission was obligated to give the employer "one last chance" to conciliate before breaking off negotiations. The instant plaintiffs do not seem to contest the correctness of that proposition. See 29 C.F.R. § 1601.23. Moreover, defendant seems to have sufficient information to establish the alleged violation by the Commission of this rule without discovering additional material. However, the availability of discovery must not turn upon this court's evaluation of the strength of the parties' positions upon the merits. Rather, we believe that plaintiffs' arguments give us ample reason to deny the instant motion.

Plaintiffs argue with some force that conciliation negotiations should not be subject to discovery since discovery of this material would destroy the openness and informality of the conciliation process and chill the interest of future litigants in undertaking good faith conciliation negotiations. E. E. O. C. v. DuPont Co., 9 F.E.P. 297 (W.D. Ky.1974); E. E. O. C. v. Griffin Wheel Company, 360 F.Supp. 424 (N.D.Ala.1973). Plaintiff's arguments in this respect are meritorious. Defendant's requests for all information concerning conciliation negotiations in effect inquires into the substance of those negotiations, thereby raising the possibility of producing chilling effects in subsequent conciliation efforts. We can conceive of no purpose which would be served by allowing discovery concerning substantive aspects of conciliation negotiations except permitting one party to improperly gain access to inter-office memoranda and other confidential information. Moreover, even if defendant posited a request for materials dealing purely with the procedural aspects of conciliation negotiations, (i. e. compliance with applicable statutes of limitations) it would seem that discovery would accomplish little since defendants would have almost as much access to this information as would plaintiffs. Therefore, while we cannot say that any discovery request which defendants might make concerning conciliation negotiation material would be denied a fortiori, we must conclude that the

instant request is overbroad and unsupported by relevant case authority. Accordingly, for the reasons hereinabove expressed, defendant's motion to compel production of all material concerning conciliation negotiations is hereby DENIED.

### DEFENDANT'S MOTION TO VACATE THE ORDER OF CONSOLIDATION

■ Defendant requests this court to vacate the order of consolidation entered on March 9, 1976, for two reasons. First, defendant contends that its former counsel failed to oppose plaintiff E.E.O.C.'s motion for consolidation after procuring four extensions of time in which to answer, because counsel felt that a settlement was imminent. Second, defendant argues that the common questions of law and fact embodied in these two actions are insufficient to support this court's determination that consolidation was proper. *See* Rule 42(a), Fed.R.Civ.P. After careful consideration, we see no reason to reconsider our determination that consolidation was warranted under Rule 42(a), and, accordingly, defendant's motion to vacate the order of consolidation is hereby DENIED.

### DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

■ Defendant moves this court to allow defendant to amend its answer so as to deny that this court has subject matter jurisdiction over the instant action. Plaintiffs in turn argue the merits of the defense sought to be added by amendment. It is well settled that voicing opposition to a motion to amend is an improper mode through which to raise objections as to the legal adequacy of the contents of the putative amendment. *See generally,* C. Wright and A. Miller, *Federal Practice and Procedure,* § 1484 at 420 (1971). Moreover, leave to amend is freely granted in federal court. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227,

9 L.Ed.2d 222 (1962). Certainly, no harm or prejudice to the plaintiffs could result from granting the amendment since this court may raise the question of subject matter jurisdiction *sua sponte* at any point in the proceeding. In light of the foregoing, defendant's motion to amend its answer is hereby GRANTED.

In sum, this court has today: (1) GRANTED plaintiffs' motion to compel production of certain documents at their present situs; (2) GRANTED defendant's motion for a protective order; (3) DENIED defendant's motion to compel production of certain documents; (4) DENIED defendant's motion to vacate the order of consolidation; and (5) GRANTED defendant's motion for leave to file an amended answer.

IT IS SO ORDERED.

### ORDER

This is an action based on discrimination in employment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Equal Pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d). Plaintiffs pray for injunctive relief, back pay, and other equitable relief due to defendant's allegedly unlawful employment practices. The action is presently before this court on (1) defendant's motion for partial summary judgment with respect to hiring and (2) defendant's motion to reconsider this court's order of December 16, 1976. These motions will be considered seriatim.

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ The gravamen of defendant's argument is that it is entitled to partial summary judgment on the racial discrimination in hiring charge since the percentage of blacks in the defendant's work force exceeds the percentage of blacks in the labor force in the surrounding area.[1] Ac-

---

1. In support of this argument defendant presents census information pertaining to the Atlanta Standard Metropolitan Statistical Area (SMSA) which it compares with hiring data compiled by the company. Defendant's figures show that while blacks comprised about 21.7% of the relevant population in 1970 and 21.1% of the relevant population in 1975, 23.4% of the persons hired by defendant were black.

cordingly, defendant asserts that systematic discrimination against blacks does not exist as a matter of law. *Robinson v. Union Carbide Corp.*, 538 F.2d 652 (5th Cir. 1976). Plaintiffs respond with a three-fold argument. First, plaintiffs contend that once black employee turnover is taken into account, the statistics reveal that very few black employees were left on the payroll at any given point in time. Second, plaintiffs contend that since blacks were hired into menial hourly positions, there was discrimination in hiring with respect to entry levels higher in the organization. Third, plaintiffs argue that the hiring area relevant to the instant action is the Atlanta-Fulton County area.

Plaintiffs' former argument initially appears to have some merit. Defendant, however, contends that *Robinson v. Union Carbide Corp., supra*, demands that this argument be rejected. In *Robinson*, the Court of Appeals examined the hiring statistics which were scrutinized by the district court and concluded that since the percentage of blacks hired by the company exceeded the percentage of blacks in the relevant work force, the district court was warranted in concluding that Union Carbide did not engage in discriminatory hiring practices. Union Carbide's promotional practices, however, were considered to embody a distinct category of potential discrimination upon which the appellate court reached a contrary result.

It might be argued that the category of discrimination denoted discrimination in "hiring" is only meaningful if we view the act of hiring as suggesting an intention to retain a person in a given position for some finite period·of time. If a black is fired from a position and another black is hired to that position, there is no increase in black employment within the firm even though hiring statistics would suggest that the organization had retained an additional black employee. In these circumstances "percentage statistics, standing alone, [would] fail to convey the full picture." *Jones v. Tri-County Electric Cooperative, Inc.*, 512 F.2d 1 at 2 (5th Cir. 1975). If defendant's facility were in fact a revolving door [2] with respect to black employees, then the discrimination in promotion or training charges might be inadequate to deal with the problem since black employees might not be in the organization long enough to be under serious consideration for training or promotion. Nevertheless, it would appear that *Robinson* might preclude denial of the instant motion for summary judgment on the basis of the forgoing argument. While there are certain features which distinguish *Robinson* from the instant action [3] we believe on balance that *Robinson* represents the sense of the law in this circuit. Therefore, we must conclude that plaintiffs' former argument against entry of partial summary judgment is unpersuasive. Accordingly, we must examine plaintiffs' other contentions.

Plaintiffs' second argument is that since blacks were hired into menial hourly positions in defendant's organization, there was discrimination in hiring with respect to the higher entry levels into the organization. Defendant again argues that the question presented by this motion is discrimination in "hiring" and that *Robinson* concludes that question. In this instance, we are unable to agree with defendant's contention since *Robinson* fails to address the thrust of plaintiff's contention that defendant is dis-

**2.** Plaintiffs contend that while defendants hiring statistics suggest that their organization is 23.4% black, turnovers transform those statistics, with the result that only 4 of the 22 Atlanta employees (18%) are in fact black.

**3.** Perhaps the most basic distinction between *Robinson* and the instant action is found in the scope of review applied to the two actions. *Robinson* came to the Court of Appeals after a trial on the merits below. Therefore, the appellate court was examining what plaintiffs had in fact proven. In the instant action, we must view the facts in the light most favorable to the party opposing the motion (plaintiffs) and deny the instant motion if a material issue of fact remains. *See* Rule 56, Fed.R.Civ.P. Construed in the latter sense, we are not certain that *Robinson* creates an irrebuttable presumption of no discrimination upon a proffer by defendants of statistics such as those presented in the instant action. *See generally, Ochoa v. Monsanto Company*, 335 F.Supp. 53 (S.D.Tex.1971).

criminating with respect to entry into the organization at different levels [4] (e. g. at management as opposed to line levels).[5] While we believe that plaintiffs have succeeded in raising a material issue of fact with respect to discrimination in hiring at the higher levels in defendant's organization, we need not rest our decision upon that ground alone.

Plaintiffs' third argument is that the labor force relevant to defendant's hiring practices is the Fulton County—City of Atlanta area, *see Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970); *see also, Chance v. Board of Examiners*, 330 F.Supp. 203 (S.D.N.Y.1971) (general population comparisons rejected where jobs in question—school supervisory positions— were relatively sophisticated) rather than the wider Atlanta Metropolitan area which defendant posits. *See Taylor v. Safeway Stores, Inc.*, 365 F.Supp. 468 (D.Colo.1973) (Standard Metropolitan Statistical area used). According to plaintiff's statistics, blacks represent 36.52% of the civilian labor force in Fulton County and 47.90% of the civilian labor force in Atlanta proper. Therefore, plaintiffs argue that defendant's hiring statistics in fact demonstrate that blacks are underrepresented in defendant's organization.

It is extremely difficult to determine the appropriate labor pool area on purely an *a priori* basis.[6] Rather, "the appropriate work area ought to be that from which the work force reasonably should be drawn." G. Cooper, H. Rabb, and H. Rubin, *Fair Employment Litigation*, at 84 (1975). *See also* J. de J. Pemberton, *Equal Employment Opportunity—Responsibilities, Rights &*

*Remedies,* at 235 (1975). One substantial consideration under such a reasonableness test would, of course, be the area from which defendant's present work force is actually drawn. In any event, a determination as to "reasonableness" generally should not be made on a motion for summary judgment, *see generally,* 10 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2729 (1971) (summary judgment rarely granted in negligence action), particularly where the case is "large" and the entry of summary judgment is only partial. *See generally,* 10 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2732 (1971).

In sum, we believe that material issues of fact remain at least with respect to: (1) defendant's allegedly discriminatory policies with respect to black entry into management levels of defendant's organization; and (2) the proper geographical area which should be used to compile work force comparison statistics. Accordingly, for the reasons hereinabove expressed, defendant's motion for partial summary judgment with respect to defendant's allegedly discriminatory hiring practices is hereby DENIED.

## MOTION TO RECONSIDER

Defendant also moves this court to reconsider its order of December 16, 1976, insofar as it ordered (1) that defendant's motion to compel production of "all conciliation material" in the EEOC files be denied; and (2) that plaintiff's motion to compel production of records concerning submanagement positions at defendant's affiliated locations be granted. These rulings will be addressed seriatim.

---

**4.** For instance, even if in *Robinson's* terms there was no discrimination with respect to entry into the firm in general, or with respect to promotion, there still might be discrimination with respect to black entry into the higher organizational levels.

**5.** For example, plaintiffs argue that while there were 11 vacancies for manager-trainees and 17 vacancies in sales and secretarial positions between 1969 and 1976, all of those positions were filled by whites.

**6.** The debate as to the geographical area which is relevant for statistical comparison purposes is a recurring one. As one author notes: "[i]t is usually to the advantage of a defendant in an urban area to prefer Standard Metropolitan Statistical area (SMSA) data over city population figures because predominantly white suburbs reduce SMSA minority group percentages. On the other hand, an employer located in a suburban area will usually prefer localized data, rather than that for SMSA." G. Cooper, H. Rabb, and H. Rubin, *Fair Employment Litigation*, at 84 (1975).

■ In the first instance, defendant now argues that what it really requested was a narrow *in camera* inspection of all EEOC documents relevant to the question of whether plaintiff EEOC had in fact properly complied with its conciliation termination procedures. *See* 29 C.F.R. § 1601.-23 *et seq.* However, even if we construe defendant's original request this narrowly, we conclude that it may not be granted. The only legally operative information relevant to the termination of conciliation issue would be agency rules and procedures and the timing and content of the termination of conciliation letters that were issued. This information is already within the knowledge of both parties and, with the exception of the legal consequences which attach thereto, appears to be undisputed. Moreover, to the extent that defendant's request might seek any information which might touch on the substance of conciliation negotiations, it is improper. As we noted in our previous order, "discovery of this material would destroy the openness and informality of the conciliation process and chill the interest of future litigants in undertaking good faith conciliation negotiations." *EEOC v. Avon Products, Inc.*, C.A. No.75–1721A, (N.D.Ga. Jan. 14, 1977) (Henderson, C. J.); *EEOC v. Dupont Co.*, 9 F.E.P. 297 (W.D.Ky., 1974); *EEOC v. Griffin Wheel Company*, 360 F.Supp. 424 (N.D.Ala.1973). Accordingly, for the reasons hereinabove expressed, defendant's motion to reconsider this court's order denying defendant's motion to compel production of certain conciliation materials in the EEOC's files is hereby DENIED.

■ Defendant also requests that this court reconsider the portion of our order allowing plaintiffs discovery as to submanagement positions in defendant's affiliated stores. In part, our decision was based on plaintiffs' representation that they had "not been given [an] opportunity to examine the applications of persons hired and not hired by defendant." It now appears that this representation was, at the very least, a good faith error, since plaintiffs have entered into certain stipulations with opposing counsel which have yielded a good deal of information concerning defendant's affiliates. In addition, plaintiffs' own brief reveals that they have previously been afforded access to certain data concerning submanagement positions at affiliated stores.[7] Also, defendant has now agreed to answer 56 interrogatories which were previously objected to and which bear on the question of defendant's employment practices at its affiliates. Moreover, careful scrutiny of plaintiff EEOC's complaint suggests on balance that it intended to lodge the instant action against defendant's Atlanta facility.[8] In light of the more fully developed factual record now before this court, we believe that defendant's motion to reconsider is well founded. Accordingly, defendant's motion to reconsider is hereby GRANTED as to the portion of this court's order granting plaintiff's motion to compel the production of documents concerning submanagement positions at defendant's affiliated stores.

In sum, this court has today: (1) DENIED defendant's motion for partial summary judgment; (2) DENIED defendant's motion to reconsider this court's order of December 16, 1976, denying defendant's motion to compel production of certain documents concerning conciliation negotiations presently in plaintiff EEOC's files; and (3) GRANTED defendant's motion to reconsider this court's order granting plaintiffs' motion to compel production of certain documents relative to defendant's employment

---

7. At page 2 of Plaintiffs' Memorandum In Opposition to Defendant's Motion for Reconsideration of the Court's Order of December 17, 1976, "plaintiff advises this court that its *previous review* of applications of persons not hired at submanagement positions in affiliated stores was solely for the purposes of settlement and not in order to prepare the case for trial."

8. The operative portion of plaintiff EEOC's complaint appears to be paragraph 7 wherein it is stated that "Since July 2, 1965, and continuously up until the present time, the company has intentionally engaged in unlawful employment practices *at its Atlanta facility*, in violation of Section 703 of Title VII of the Civil Rights Act of 1964.

practices at submanagement levels in defendant's affiliated stores.

IT IS SO ORDERED.