635 A.2d 533

MARVIN LOUIS HAMMOCK, JR., ET AL., PLAINTIFFS,
v. HOFFMANN–LAROCHE, INC., DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 25, 1993—Decided December 16, 1993.

Before Judges PETRELLA, BAIME and VILLANUEVA.

*Michael E. Tankersley* argued the cause for intervenor/appellant Public Citizen, Inc. (*Medvin & Elberg,* attorneys; *Alan Y. Medvin,* of counsel; *Philip Elberg,* of counsel and on the brief; *Mr. Tankersley, Leslie A. Brueckner* and *David C. Vladeck* of Public Citizen Litigation Group, also on the brief).

*Jeffrey A. Peck* argued the cause for respondent (*Shanley & Fisher,* attorneys; *Mr. Peck,* of counsel and on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D.

Intervenor Public Citizen, Inc. appeals from a trial court order which granted intervenor access to certain materials, but held that most documents identified by defendant drug company would remain under seal and subject to a prior protective order entered in the underlying action which had been concluded. We remand for further findings of fact regarding the basis for keeping the various documents under seal.

In the underlying action, plaintiffs [1] sought to recover damages for injuries resulting from Thelma Hammock's ingestion of Accutane. Defendant Hoffmann–LaRoche, Inc. ("Roche") manufactures and distributes Accutane for use, pursuant to the direction of a licensed physician only, for the treatment of severe recalcitrant

---

[1] The plaintiffs therein were Marvin Louis Hammock, Jr. and Leon Wilson, infants, by their Guardian ad Litem, Thelma Hammock and Marvin Louis Hammock, Sr., individually.

cystic acne. In May 1986, a Board-certified dermatologist, Dr. Jose Fishman, prescribed Accutane to Thelma Hammock. At that time, the package insert for the drug contained a "black box" warning regarding its potential teratogenicity.

As a result of Thelma Hammock's ingestion of Accutane during her pregnancy, her son Marvin was born severely deformed and brain damaged. Plaintiffs alleged that Roche had withheld information about the health risks of Accutane from the Food and Drug Administration (FDA) and prescribing physicians. Plaintiffs also alleged that Dr. Fishman was negligent in prescribing Accutane during Thelma Hammock's pregnancy, but they settled with Dr. Fishman after Roche was granted summary judgment and prior to our opinion on plaintiffs' appeal.

Pursuant to *R.* 4:10–3, Roche file a motion for a protective order covering the documents requested by plaintiffs in discovery. This motion was supported by detailed affidavits of Dr. George S. Vadnai and Donald Hollander. Roche contends that the documents, for which it sought and continues to seek protection, contain information essential to the filing of an Investigational New Drug ("IND") or New Drug Application ("NDA") for Accutane. IND's and NDA's are the vehicles by which a pharmaceutical company receives approval to market prescription drugs. FDA regulations provide that data contained in an IND or NDA file can be proprietary, trade secret materials not subject to public disclosure. *See* 21 *C.F.R.* § 20.111(d).

Roche claims a proprietary interest in keeping secret the material within the Accutane IND and NDA files. The affidavits of Dr. Vadnai and Mr. Hollander also explained that the IND and NDA files contain detailed information on the nature of the research efforts undertaken by Roche in connection with its development of Accutane. Roche argued that there was "good cause" for the entry of a protective order because it would be grossly unfair to make Roche's information and expertise about Accutane freely available to competing pharmaceutical companies. Such release, Roche explained, would permit those companies to investigate and

market dermatologic products without incurring the substantial expenses that Roche had incurred in developing Accutane.

On May 18, 1989, the judge determined that Roche had demonstrated "good cause" for the entry of an order ("May 18 Order") governing the dissemination of Roche documents.[2]  The judge stated that good cause existed because "such documents may[3] contain trade secrets, confidential and proprietary information and material protected by the physician-patient privilege of persons who are not parties to this action."  The May 18 Order provides in part: (i) all documents produced by Roche shall be used only in conjunction with this lawsuit; (ii) a party objecting to the designation of Roche documents as confidential, had to do so within sixty days of receipt of such documents; and (iii) Roche had the burden of demonstrating that a challenged document contains trade secrets or other proprietary and confidential information.

On June 23, 1989, after another hearing, the judge directed Roche to make available to plaintiffs certain transcripts from the other suits against Roche, but prohibited plaintiffs' counsel from conferring with other attorneys in other jurisdictions concerning Accutane litigation and disseminating any information obtained in the present litigation.

Throughout this case, Roche reminded plaintiffs that the documents it produced which were attached to or referenced in plaintiffs' briefs were subject to the terms of the May 18 Order and could not be disseminated.  Plaintiffs never objected to Roche's

---

[2] The court denied plaintiffs' requests for financial information and "marketing plans," but ordered Roche to obtain and produce deposition transcripts from another Accutane lawsuit that was pending in a federal court in Oklahoma.  In June 1990, plaintiffs' counsel asked the judge to reconsider her ruling regarding the non-discoverability of financial information and marketing plans.  Thereafter, the judge directed Roche to provide marketing documents for Accutane to the court for *in camera* review, which Roche did.  Plaintiffs' counsel acknowledged that "all written materials furnished by Roche are governed under the terms of the [May 18] Protective Order."

[3] This word was apparently hand-written into the order by the judge.

position regarding the applicability of the May 18 Order to the documents referenced and attached to their briefs.

After full discovery, on October 25, 1991, Roche moved for summary judgment to dismiss plaintiffs' complaint. Roche's motion was based on the testimony of plaintiffs' expert and Dr. Fishman, as well as the prescribing information available for Accutane in 1986. In opposition to this motion, plaintiffs submitted hundreds of pages of Roche documents and deposition transcripts. These voluminous submissions included: (i) confidential marketing information; (ii) proprietary business materials; (iii) privileged medical information about third parties; and (iv) transcripts subject to confidentiality orders of other courts.

At oral argument on May 14, 1992, the second judge ultimately determined that Roche's warning was adequate as a matter of law and granted Roche summary judgment. On appeal, we affirmed the decision on July 13, 1992,[4] stating:

> The FDA specifically approved the contents of Hoffman–LaRoche's "Black Box" warning regarding Accutane. Plaintiffs failed to present evidence from which a jury could find that the statutory presumption established by *N.J.S.A.* 2A:58C–4 was overcome.

In January 1992, prior to Roche obtaining summary judgment, plaintiffs' request to modify the order prohibiting plaintiffs' counsel from participating in other Accutane lawsuits was denied. On April 7, 1992, plaintiffs' counsel in two other Accutane lawsuits moved to intervene in this case to obtain pleadings and deposition transcripts "taken or produced with exhibits/documents used or attached." On April 16, 1992, Public Citizen[5] moved to intervene, asking the trial court to vacate the May 18 Order and unseal the records to "cast further light on the hazards which are posed by

---

[4] The Supreme Court denied certification.

[5] One of the groups within Public Citizen, Inc. is a public health research group which, inter alia, has petitioned the F.D.A. with respect to the regulation of Accutane, and the way in which the F.D.A. regulates and requires physicians to provide certain warnings with respect to Accutane, and has petitioned actively for more restrictive regulation of the prescriptions.

Accutane" and provide additional support for regulatory restrictions on the drug. Public Citizen submitted the affidavit of Dr. Sidney M. Wolfe which demonstrated that the public already is well aware of the potential side effects of Accutane. Public Citizen's purpose in gaining access to the documents is to examine material that may concern the regulation of Accutane, hoping to later disseminate the material directly to the F.D.A. or to other interested groups concerned with drug regulation.

Roche opposed the intervention motions on several grounds. First, Roche pointed out that the proposed intervenors could not satisfy the requirements of R. 4:33–2. Second, Roche argued that the proposed intervenors came to court with "unclean hands." Third, Roche asserted that proposed intervenors had not carried their burden of proof with respect to the modification of two judges' prior orders. With respect to this last point, Roche submitted the affidavit of Dr. Bruce Medd, which established that the FDA has all the information from this case that Public Citizen wants to review and disseminate.

On June 11, 1992, a hearing was held on the intervention motions. The judge ruled that plaintiffs' counsel in the other two Accutane law suits could have access to the Roche documents as well as deposition transcripts produced in this case pursuant to the terms of the May 18 Order. With respect to the "court file," the judge directed Roche to review it and designate those portions of it which Roche believed contained proprietary, trade secret or privileged information. These rulings were memorialized in an order signed on July 17, 1992 ("July 17 Order").

On September 24, 1992, Roche filed an application to continue the protective order regarding more than 220 documents identified in Schedule "A," which was attached to its application. Roche stated that the documents fell into one or more of three general categories: "(a) those containing proprietary, confidential and/or trade secret information; (b) those containing information protected by the physician/patient or other privilege; and (c) those subject to protective orders in other cases."

Roche claimed that approximately 200 of the 1,000 documents contained in the court file contained trade secret, proprietary or privileged information. Forty-two of the documents designated by Roche are records, reports correspondence or transcript excerpts specifically relating to plaintiffs or third-parties that are subject to a physician-patient privilege.[6] Twenty-two of the designated documents were excerpts from depositions taken in other cases that were subject to protective orders from other courts. The remaining documents were materials from Roche's IND and NDA files for Accutane. This left approximately 140 documents which Public Citizen seeks to obtain.

On November 2, 1992, Roche submitted another affidavit from Mr. Hollander as well as the affidavits of Stanley S. Shapiro, Ph.D., and Edward Thiele. These affidavits established that Roche currently faces competition from at least a dozen other pharmaceutical companies with respect to the therapeutic uses of Accutane. These affidavits claim that Roche will be irreparably harmed if the Accutane IND and NDA files are publicly disclosed. Finally, the affidavits state that if Roche's IND and NDA documents are publicly disseminated: "[T]he general public health and safety will suffer because a failure to protect Roche's proprietary information will have a chilling effect on new drug development in this country. It will have a chilling effect because it will create a state of uncertainty among manufacturers contemplating the research and development of new, and potentially lifesaving drugs."

On November 6, 1992, the judge held another hearing, at which Public Citizen conceded that it had not tried to obtain the information from the FDA directly. Public Citizen informed the trial court that it wanted these materials because although the public knows that Accutane creates a hazard, it "is not the same as the specifics regarding the degree of it, and the type of it" and "there is a more general public interest in terms of oversight, of the

---

[6] Public Citizen has not indicated whether it was successful in obtaining waivers from any of the patients including plaintiffs herein.

candor with which drug manufacturers deal with the F.D.A. and the public in general." But the judge held that there was no overriding interest. Although the trial court recognized a presumption of access to the court records, it implied that the presumption did not apply in this case. Public Citizen conceded before the trial judge that "if there was anything that was filed in the court records, solely for the purpose of getting it out from the protections of a properly-entered Protective Order, the presumption of public access would not apply to those." The judge determined that plaintiffs' counsel had tried to circumvent the protective order by filing certain documents with the briefs and that both the briefs and those documents contained discussion of and references to confidential materials. The judge further determined that while there is a presumption of public access, the submissions made by Roche demonstrated a continuing need for confidentiality that outweighed Public Citizen's right to access.

On appeal, Public Citizen argues:

POINT I THE TRIAL COURT VIOLATED COMMON LAW TRADITION AND THE FIRST AMENDMENT BY ESTABLISHING A PRESUMPTION AGAINST PUBLIC ACCESS TO COURT RECORDS THAT PERMITTED HOFFMAN–LA ROCHE TO ABUSE THE PROTECTIVE ORDER PROCESS.

A. Public Access to Court Records Is Protected by Common Law And The First Amendment.

B. By Requiring A Threshold Showing That Public Interest Would be Served By Disclosure Of The Particular Documents At Issue, The Court Effectively Reversed The Presumption Of Public Access.

C. By Reversing The Presumption Of Public Access, The Trial Court Permitted Hoffman–LaRoche To Abuse The Protective Order Process.

POINT II REVERSAL IS ALSO WARRANTED BECAUSE HOFFMAN–LaROCHE PROFFERED REASONS FOR MAINTAINING THE COURT RECORDS UNDER SEAL THAT ARE INADEQUATE AS A MATTER OF LAW.

## I.

Essentially, Public Citizen contends that both judges erred in maintaining the confidentiality of Roche's documents because: (i) there is a "First Amendment" and a "common law" right to obtain

pleadings filed in this case that transcends the nondisclosure orders previously entered in this lawsuit; (ii) Roche did not demonstrate "good cause" for the entry of the May 18 Order; (iii) in response to the July 17 Order, Roche misdesignated portions of the Court file that contained proprietary information; and (iv) the court reversed the presumption of public access.

The documents sought by Public Citizen allegedly contain the type of trade secret information which the United States Supreme Court has recognized—notwithstanding the First Amendment— can be protected from unauthorized disclosure. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 *U.S.* 596, 606–07, 102 *S.Ct.* 2613, 2620, 73 *L.Ed.*2d 248, 256–58 (1982); *Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 *F.*2d 323, 326 (10th Cir.1981); *Kentucky Solar Energy Controls, Inc. v. American Borate Co.,* 497 *F.Supp.* 555, 556–57 (E.D.Ky.1980); *N.J. Div. of Youth & Family Services v. J.B.,* 120 *N.J.* 112, 123–24, 576 *A.*2d 261 (1990).

The United States Supreme Court has clearly stated that "[a] litigant has no First Amendment right of access to information made available only for the purpose of trying his suit," or in any way to disseminate documents or information obtained through court-supervised discovery. *Seattle Times Co. v. Rhinehart,* 467 *U.S.* 20, 31–36, 104 *S.Ct.* 2199, 2206–09, 81 *L.Ed.*2d 17, 26–28 (1984); *see also In re Knoxville News–Sentinel Company, Inc.,* 723 *F.*2d 470, 474 (6th Cir.1983); *Haykel v. G.F.L. Furniture Leasing Co.,* 76 *F.R.D.* 386, 390–93 (N.D.Ga.1976); *Maritime Cinema Services Corp. v. Movies En Route, Inc.,* 60 *F.R.D.* 587, 590 (S.D.N.Y.1973).

Just as there is no unfettered "First Amendment" right to review proprietary documents, there is no unfettered "common law" right to review trade secrets contained in a court file. *See Zukerman v. Piper Pools,* 256 *N.J.Super.* 622, 626, 607 *A.*2d 1027 (App.Div.), *certif. denied,* 130 *N.J.* 394, 614 *A.*2d 617 (1992) ("[t]he public's right of access to . . . inspect and copy judicial records, is not absolute. . . .")

In an unreported decision in *Hall v. Hoffmann–La Roche Inc.*, Public Citizen, making the same arguments raised herein, sought to intervene and obtain documents in an Accutane lawsuit in a Texas state court. Public Citizen's assertion that the public's "right to know" outweighed Roche's interest in protecting its proprietary information was rejected in *Hall*. The court ruled that Roche's serious and substantial interest in protecting the confidentiality of its Accutane files outweighs the public's need to know. However, contrary to Roche's argument that Public Interest is barred by collateral estoppel, there has not been any final judgment rendered in *Hall*.

In *Matter of Krynicki*, 983 *F*.2d 74, 75–76 (7th Cir.1992), the Seventh Circuit stated that information that is not used to "reach a decision on the merits" can be kept secret. At the June 11 and November 6, 1992, hearings, the judge made it clear that materials from the confidential Accutane IND and NDA files as well as the proprietary marketing information plaintiffs filed with the court were submitted in "bad faith" and were irrelevant to the merits of the lawsuit. Thus, the trial judge's ruling is consistent with *Krynicki* to the extent that it prevented Public Citizen from reviewing documents found to be irrelevant to the merits of this case. Moreover, the Seventh Circuit's ruling in *Krynicki* that another court's order regarding the confidentiality of deposition transcripts had to be respected, *id.* at 78, supports the judge's ruling herein that confidentiality orders entered by other courts had to be followed.

A linchpin of Public Citizen's appeal is the assertion that Roche did not demonstrate "good cause" for the entry of the May 18 Order. Based on this assertion, Public Citizen argues that it has a legal right to obtain every document filed in this case and to have access to all the documents produced by Roche. The finding of "good cause" in the May 18 Order was based upon the affidavits submitted on behalf of Roche by Dr. Vadnai and Mr. Hollander which established that: (a) many of the documents to be produced contained proprietary and confidential information; and (b) it

would be unduly burdensome to engage in a page-by-page review to demonstrate the proprietary and confidential nature of each document. For example, documents identified by Dr. Vadnai and Mr. Hollander contain extensive information on the methods Roche uses for the chemical synthesis and formulation of Accutane along with details of the manufacturing process. Roche spent millions of dollars over many years developing these processes and many of the formulation procedures are not themselves patentable, so Roche's only protection is confidentiality.

■ The first judge did not abuse her "broad discretion" when she held that there was "good cause" to issue the May 18 Order. *In re Agent Orange Product Liability Litigation,* 96 *F.R.D.* 582, 583–85 (E.D.N.Y.1983). The volume of documents requested by plaintiffs, the prospect of litigating on a document-by-document basis and Roche's proof that large numbers of documents ought to be protected justified the May 18 Order. Although plaintiffs did not question this finding or the order, Public Citizen does.

Our difficulty is that we do not have any record or findings to review with respect to either judge's rulings and orders. Nor do we know what the various documents contain. We cannot find any support in the record for Roche's statement that Roche's application covers seventeen pages and includes approximately 200 entries or that the judge was able to follow these designations when he made his *in camera* review. Therefore, it is necessary for Roche's attorney to designate by categories [7] the type of documents sought to be protected and the general basis for the protection to be submitted with the documents to the trial court for an *in camera* review. If the trial judge desires, he might consider the appointment of a master to perform this task.

We do not question any of the judges' rulings but we need to know the factual basis for same. If, as the trial judge noted at the

[7] For instance, some of the documents may contain trade secrets (developmental research, marketing, etc., transcripts of other proceedings, privileged medical records, totally irrelevant information or documents otherwise privileged).

November 19, 1991, hearing, all the materials plaintiffs supplied to the court were "really not pertinent" to the issues raised by Roche's motion for summary judgment, Public Interest has no right to obtain the questioned documents. Roche must make a sufficient factual showing to keep its alleged proprietary and confidential information subject to the terms of the May 18 Order. Whether it has done so is for the trial judge to determine.

We remand to the trial judge to make findings of fact and conclusions of law consistent with this opinion and in a form which we are able to review. We retain jurisdiction.