Mabel FIELDS, et al., Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

BEECH AIRCRAFT CORPORATION, Beech Aerospace Services, Inc., and International Association of Machinists and Aerospace Workers, District Lodge No. 70, Defendants.

Civ. A. No. 76–53–C5.

United States District Court,
D. Kansas.

Nov. 16, 1981.

Fred W. Phelps, Jr., Topeka, Kan., Freedman, Borowsky & Lorry, Philadelphia, Pa., Enoch Perry, III, E.E.O.C., Washington, D. C., for plaintiffs.

Larry B. Spikes, John C. Frank, Wichita, Kan., for Intern. Ass'n of Machinists and Aerospace Workers.

John F. Aslin, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., and Terry L. Hamilton, E.E.O.C., Washington, D. C., for Beech Aircraft Corp.

## MEMORANDUM AND ORDER CERTIFYING CLASS ACTION

THEIS, Senior District Judge.

This action presently involves seven individual plaintiffs and plaintiff-intervenor, Equal Employment Opportunity Commission, who allege employment discrimination on bases of race and sex, by defendants Beech Aircraft Corporation, Beech Aerospace Services, Inc., and the International Association of Machinists and Aerospace Workers, District Lodge No. 70. Plaintiffs seek to dismiss this action against Beech Aerospace Services, Inc., and therefore it is not a part of the motion now before the Court, viz., plaintiffs' motion to certify a class of all female and black employees at the Wichita plant of Beech Aircraft Corporation who are currently employed, or were employed at any time since 300 days prior to June 7, 1975, to the present time, but are no longer employed, or those who may be employed in the future. Plaintiffs' proposed class also includes all females and blacks who have been rejected as applicants for employment at Beech at any time since 300 days prior to June 7, 1975. Only Beech's Wichita facilities are involved.

A hearing was held on the question of class certification on March 26 and 27, 1981. Based upon the evidence presented at that

hearing, and having considered the briefs of the parties, the Court makes the following findings of fact.

1. Plaintiffs Mabel Fields, Faith Rich, Cleo Houston, Edna Banks and Shirley Wiseman are black females. Plaintiffs Charles Thomas and John Gastion are black males. The female plaintiffs complain of racial and sexual discrimination, while the male plaintiffs complain of racial discrimination in employment with respect to hiring, promotion, transfer, compensation, benefits, terms and conditions of employment, lay off and discharge at Beech Aircraft Corporation.

2. Fields, Houston and Banks held jobs in the EEO "operative" category. Rich and Banks worked in "laborer" category positions. Wiseman's jobs were in the "clerical" category, Thomas was classified as a "service worker," and Gastion's job was classified in the "craftsman" category.

3. None of the named plaintiffs were ever employed in the EEO categories of "office/manager," "professional," "technical," or "sales worker."

4. In 1977 Beech employed 2,156 women and 577 blacks.

5. Although Beech is divided into numerous departments, personnel policy for all departments is centrally determined and controlled by the Industrial Relations Department, headed by Gary Hanssen, a white male.

6. The Industrial Relations Department has five sections, which report to Hanssen. Hanssen Dep., Ex. 3. Each is headed by a white male. Hanssen Dep. at 89–90.

7. The Industrial Relations Department has sole authority to recruit professional employees for all departments, for both entry-level and higher jobs. The Industrial Relations Department recruiter can offer a job to a recruit in another department. Hanssen Dep. at 133–34; Rembleske Dep. at 41.

8. All hiring is done by the Industrial Relations Department for both hourly and salaried positions. The procedure is the same for hourly and salaried positions. Hanssen Dep. at 118–21.

9. The complete file on all Beech employees is kept by the Industrial Relations Department. Hanssen Dep. at 108–12.

10. One Beech Affirmative Action Plan covers all departments in Wichita, and is prepared by the Industrial Relations Department.

11. All employee transfer applications, whether for hourly or salaried employees, and whether for the same department or a different one, must be made to the Industrial Relations Department, which coordinates and ultimately approves all such transfers. Hanssen Dep. at 125; Ehling Dep. at 43–45; Rembleske Dep. at 45–46; Pl. Ex. P–7, Beechcrafters' Handbook at 13.

12. An analysis of defendant's 1977 Affirmative Action Program, Pl. Ex. P–5, and the 1970 census date for Wichita, Pl. Ex. P–10, indicates, inter alia, underrepresentation of blacks in "official/manager" (no blacks), "professional/technical," and "sales worker" (no blacks) categories. Only one of 107 managers was female. Women in the "professional" jobs were concentrated in two departments—General Administration and Industrial Relations—while very small percentages of women "professionals" are employed by Engineering (5 of 434 or 1.1%); Manufacturing (1 of 158 or 0.6%); and Marketing (5 of 160 or 3.1%).

13. Two named plaintiffs testified at the hearing. Shirley Wiseman testified about her own experiences while she worked at Beech. She said at her initial interview with Glenn Ehling she was told to expect racial remarks and trouble. She testified about specific instances of racial harassment, and of sexual comments and harassment. Wiseman also testified about her experience interviewing other persons concerning their complaints of discrimination at Beech, while she was working for the NAACP. She testified about her understanding of what a class action was, and told of her desire to be a class representative.

Charles Thomas testified about his experience working in the Sanitation Depart-

ment, which had 16 black and 5 white employees. He testified the whites had the easier jobs in his department, and referred to the tasks he was assigned as "nigger work." He told of a fight he had with a white employee who threatened him with a knife while subjecting him to racial slurs and abuse. He testified about other employees who had been subjected to racial discrimination and that he wanted to be a class representative.

Both Wiseman and Thomas testified concerning Beech's bad reputation in the community as it relates to equal employment opportunities.

14. The other named plaintiffs were present at the hearing although not called to testify. All have testified by deposition, and that testimony is before the Court. The allegations can be summarized as follows.

Faith Rich was laid off, but Beech kept a white woman with less seniority working. Later she was promised a promotion and trained for it, but was not promoted. The job went to a white person with less seniority. Her crew chief at the time of her deposition gave trouble to all the blacks, and gave them all the dirty work. She was later discharged, allegedly in retaliation for maintaining this action.

Edna Banks was subjected to personal criticism not related to job performance. The crew chief made passes at her. She was called a "nigger girl" while on the job. She was denied jobs she requested, which were given to new white employees. She had to do work essentially the same as men, but received less pay.

Cleo Houston got less attention and training after she was hired than white employees received. She had to sweep outside her department. She and other blacks were required to stand while working, which was not the case with similarly situated white employees.

When Mabel Fields' medical problems indicated a need to transfer from the paint in Department 803, she was terminated, despite availability of positions which would have satisfied her doctor's suggestion. She knew of other openings for which she was qualified, and about which she inquired, but she was told there were no openings and she lost her job.

John W. Gastion had been doing the same job for about fourteen years. He was denied promotion to the position of outside trucker. He complains of discrimination with respect to classification and of denial of promotion and of pay raise. He also alleges the outside trucker position is held for whites, and he knows of no black outside trucker.

15. The testimony of the named plaintiffs indicates each plaintiff has a complaint with respect to employment discrimination at Beech and are members of the class.

16. The claims of the named plaintiffs are typical, and there exists a group of employees with similar complaints, including the named plaintiffs and others. The plaintiffs' testimony indicates they are adequate representatives of the class.

17. A large number of other class members were present at the March 26th certification hearing.

18. Nita Long, Supervisor of EEO Programs for Beech, testified there had been 72 EEO complaints since 1974 which received action. 51 of these included claims of racial discrimination, and 16 included claims of sex discrimination. Six sex discrimination complaints were filed by white females. None of these complaints were filed by women in salaried positions, according to Mrs. Long, who also testified that 63 of the approximately 1200 salaried employees presently employed by Beech are female.

19. Mrs. Long testified there were some blacks in salaried positions, but she was unable to say how many, nor identify any by name.

20. Three class members who are not named plaintiffs testified to claims similar to those of the plaintiffs. One of those, Regina Hart, is a white female. She testified she had been refused transfers which then went to males with less seniority. She

said females seeking to be promoted to the high paying, predominantly male "ring out" section, were told they would have to attend outside classes in order to qualify for a transfer there, while their male counterparts were not so informed, nor were the males denied transfers on that ground.

Defendant Beech now acknowledges plaintiffs have proven they are entitled to maintain this action as a class action, but seek to limit the class to black males and females who are hourly employees within the EEO classifications of Clerical, Craftsman, Operative, Laborer, and Service Worker. Beech contends since all hourly employees, whether unionized or not are governed by the terms of the bargaining agreement, while salaried employees are not, it would be inappropriate to include salaried employees. Evidently they would also exclude any hourly workers in any EEO classification which has not employed one of the named plaintiffs. They would also exclude white females from this action because of the "antagonism or conflict between these black female plaintiffs and white females is too evident in the record for dispute." Defendant Beech Aircraft Corporation's Suggested Findings of Fact and Conclusions of Law, and Brief in Support to Plaintiffs' Motion that this Case be Maintained as a Class Action" [hereinafter referred to as (Defendant's Suggested Findings) ], at 10.

Beech argues there is no adequate showing of the existence of common questions of law or fact between the wage earning named plaintiffs and salaried employees. "Different policies apply to salaried employees and cannot be the basis for any of these plaintiffs complaints." Defendant's Suggested Findings, at 12. The gist of the typicality argument is basically the same: If there is discrimination in salaried positions it must be a different kind of discrimination so these complaints aren't typical of any of that discrimination; none of these people ever earned a salary, nor tried to transfer there, so those positions should not be included.

The Tenth Circuit rejected the narrowing of classes severely in *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975). There, the trial court had defined the classes as limited to the particular occupation and the particular personal characteristics of the named plaintiffs, and then found the numerosity requirement of Rule 23 was not met. The Court of Appeals noted that plaintiffs had launched:

". . . a broad scale attack on the defendant's employment and promotional policies. Their complaint extended beyond challenging the promotional practices in their own department and alleged that the promotional policies throughout the plant had a discriminatory effect. To the extent, therefore, that employees throughout the plant of the Martin Company were discriminated against as a result of the company's policies, the plaintiffs made claims which embraced these other people regardless of whether they were engaged in work identical to that of the plaintiffs."

522 F.2d at 341. This language is cited with approval in *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 271 n.8 (10th Cir. 1975), a case on which defendant relies. In *Taylor,* the decision did not rest on a rule the claims must be alike, "or that all the class plaintiffs must be involved in identical work, but rather that the plaintiff must prove the existence of a class with similar claims." *Id.* See *Anderson v. Kansas Power and Light Co.,* Civil Action No. 77–4069 (D.Kan. January 21, 1981).

The heart of plaintiffs' claim is not that the policy articulated by Beech and the Union in the collective agreement is the cause of racial and sex discrimination at Beech, but rather that the actions of the Industrial Relations Department and others at Beech, in applying Beech's various policies, result in discrimination against blacks and women. It would be ironic if by keeping a job category all white and all male, an employer could immunize that category from scrutiny in a class action lawsuit brought by current employees since no named plaintiff was employed in that category.

Defendants would like this Court to misread *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), as apparently did the Fourth Circuit Court of Appeals majority in *Abron v. Black & Decker (U.S.), Inc.*, 654 F.2d 951 (4th Cir. 1981), which was decided since the most recent briefs in this case were submitted. Plaintiff Abron was denied a temporary transfer to light work for health reasons upon her return from medical leave. She filed a broad-based class action against Black & Decker, covering recruitment, job classification, hiring and more. She proved at trial that she had been a victim of discrimination on her personal claim. She also proved that Black & Decker had discriminated in hiring, recruitment, assignment and classification, promotion and permanent transfer, and operation of the apprenticeship program. The trial court ordered class relief, and awarded attorney fees. The Court of Appeals held, in a per curiam order, that since plaintiff was the only person ever denied a temporary transfer, and since that was the only discrimination she ever suffered, she lacked standing to represent anyone else besides herself, since she lacked the same interest, and had not suffered the same injury as the members of the class she had purported to represent. The class relief was vacated, and the case was remanded so the court could recompute the attorney fees to include only the work relating to her individual claim.

This result is what the Tenth Circuit rejected in *Martin Marietta*. "If the classes were always limited as they were in this case, it would effectively make Rule 23 a nullity," they wrote of the trial court's action in *Martin Marietta*. 522 F.2d at 341. In an extensive and thoughtful dissent in *Abron*, Judge Murnaghan noted that the *Abron* opinion "grafts onto Rule 23 ... a procedural barrier which will effectively limit the substantive rights of minority employees under Title VII." At 955 (Murnaghan, J., dissenting).

In *East Texas Motor Freight*, the plaintiffs never pursued their class action allegations, and the case was tried only on the individual claims. Only after the plaintiffs had lost on the merits at trial did they seek certification, and the class was certified not by the trial court but by the Fifth Circuit Court of Appeals. The Circuit Court then proceeded, on the basis of the evidence adduced at trial of the individual claims, to find classwide liability against defendant company and union. Declining to consider whether a circuit court should ever certify a class, the Supreme Court held they had erred in the particular case because it had already been determined, after a trial on the merits, that the would-be class representatives had not been the victims of discrimination. They were not and could not be members of the class they purported to represent. The plaintiffs "could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." 431 U.S. at 403–04, 97 S.Ct. at 1897.

In the case before the Court, plaintiffs have timely sought certification, and have alleged injury of the same type as the class, including the portions of the class opposed by Beech. *East Texas Motor Freight* is not applicable to this case. The case which is relevant to the issue presented is *Martin Marietta.*

Defendant also resists inclusion of white females in the plaintiff class. In Defendant's Suggested Findings, it is asserted: "no white female has expressed a desire to be represented by the EEOC." This ignores the testimony of Regina Hart at the hearing. The fact that Mrs. Long, the Supervisor of EEO Programs, does not want to be included, is not persuasive. Mrs. Beech's presence in the class can be avoided by limiting the class to exclude all employees also serving on the Board of Directors.

Everything which has been said about salaried employees is applicable to white females as well. There are women class members, and to the extent women are discriminated against they have a common interest, and present common issues. To

the extent their complaints concern sex-based discrimination, their claims appear to be typical of the complaints of females in general.

The presence of the EEOC as plaintiff makes it academic whether to certify a class under Rule 23 in order to be able to extend relief to salaried employees or white females in any event. In *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), the Supreme Court determined that the EEOC may seek class-wide relief directly under § 706(f)(1) of Title VII without certification as a class representative under Rule 23. "[T]he Courts of Appeals have held that EEOC enforcement actions are not limited to the claims presented by the charging parties." This approach "is far more consistent with the EEOC's role in the enforcement of Title VII than is imposing the strictures of Rule 23, which would limit the EEOC actions to claims typified by those of the charging party." 446 U.S. at 331, 100 S.Ct. at 1706–07.

The Court noted that a potential conflict between named plaintiffs and putative class members sometimes forecloses a class action under Rule 23.

"In employment litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes. But unlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged."

*Id.* at 1707. Therefore, should it become apparent in the future course of this case that there are unforeseen difficulties with commonality or typicality, the unnamed class members can still be represented by the EEOC, and included in any relief which might be proven necessary and appropriate.

The Court concludes that the 2156 women and 577 blacks satisfy the numerosity requirement of Rule 23(a)(1). As noted above, the common questions concern whether members of the class were discriminated against in violation of law, and satisfy Rule 23(a)(2). See, *Anderson v. Kansas Power & Light Co.*, supra; *Wheaton v. Cessna Aircraft Co.*, Civil Action No. 76–77–C5 (D.Kan. June 13, 1980). The complaints of the named plaintiffs have been shown to be typical of the complaints of the class. See *Anderson v. Kansas Power & Light Co.*, supra.

Plaintiffs have shown that they are adequate representatives of the class. All have taken an active interest in the progress of the case, and have shown themselves to be both interested in and knowledgeable about the responsibilities they have assumed in taking on that role. Plaintiffs' counsel does a great deal of litigation in this field, and has other class actions pending in this district. The presence of the EEOC further enhances the ability of plaintiffs and their counsel to vigorously pursue this action and, as noted, will eliminate concern over the potential conflict between various categories of class members.

This action can appropriately be certified under Rule 23(b)(2), since it concerns the actions of refusals to act of defendant, on grounds generally applicable to the class, and any remedies would include final injunctive or corresponding declaratory relief with respect to the class as a whole. *Rich v. Martin Marietta*, supra; *Anderson v. Kansas Power & Light Co.*, supra.

IT IS THEREFORE ORDERED that this action is to be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, said class to consist of all female and black employees at the Wichita plant of Beech Aircraft Corporation who are not Directors of said corporation, who are currently employed or were employed at any time since 300 days prior to June 7, 1975, to the present, but are no longer employed, or those who may be employed in the future, and all females and blacks who have been rejected as applicants for em-

ployment at Beech in Wichita at any time since 300 days prior to June 7, 1975.

IT IS FURTHER ORDERED that the EEOC may seek classwide relief for the same class pursuant to Section 706 of Title VII of the 1964 Civil Rights Act.