**Jacqueline M. HARRIS, et al.,
Plaintiffs,**

**Equal Employment Opportunity Commission, Intervenor-Appellant,**

v.

**AMOCO PRODUCTION CO.,
Defendant-Appellee.**

**No. 83–3665.**

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1985.

670

Mark S. Flynn, Irene L. Hill, E.E.O.C., Appellate Services Div., Washington, D.C., for intervenor-appellant.

McGuiness & Williams, Douglas S. McDowell, Robert E. Williams, William S. Franklin, Washington, D.C., for amicus Equal Employment Advisory Council.

Wayne S. Bishop, Richard K. Walker, Washington, D.C., for Standard Oil.

Robert M. O'Connell, Chicago, Ill., for Amoco.

Before CLARK, Chief Judge, and GOLD-BERG and TATE, Circuit Judges.

GOLDBERG, Circuit Judge:

Unlike courts, which are concerned primarily with the enforcement of private rights although public interests may thereby be implicated, administrative agencies are predominantly concerned with enforcing public rights although private interests may thereby be affected. To no small degree administrative agencies for the enforcement of public rights were established by Congress because more flexible and less traditional procedures were called for than those evolved by the courts.

*FCC v. National Broadcasting Co.*, 319 U.S. 239, 248, 63 S.Ct. 1035, 1039, 87 L.Ed. 1374 (1943) (Frankfurter, J., dissenting). These words, written long ago and for their own particular audience,[1] remain pertinent. Federal agencies are frequently charged with the task of issuing rules and resolving disputes in what might fairly be termed an administrative "parallel universe." These same agencies, however, are often called upon to vindicate public rights through the judiciary. Where the third branch is invoked, the neatness of Justice Frankfurter's dichotomy between private adjudication and agency action collapses into a unitary judicial proceeding, premised on private discord, yet shading into the realm of public concern. Faced too with a confluence of devices designed in part to address the far-reaching effects of a single lawsuit—the class action, intervention, and an agency's very authority to seek judicial enforcement—courts are at times bedeviled by the complexity involved in assessing the effects of these "public" elements on the individual cases before them.

---

1. In *National Broadcasting*, the Court held, under the relevant statute and regulations, that a licensed radio station could intervene as of right in FCC hearings designed to determine whether a competing channel should be licensed. 319 U.S. at 245–46, 63 S.Ct. at 1037–38.

This is one of those times. Four black employees brought the present suit against their employer, the Amoco Production Company, pursuant to title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982).[2] The initial and amended complaints together alleged that Amoco discriminated against blacks in the areas of initial job assignment, promotion, and compensation. The plaintiffs sought to represent both themselves and "a class of persons composed of (1) all black employees of the New Orleans division of AMOCO Production Company, [and] (2) all black employees who have been employed in the New Orleans division ... at any time subsequent to June 11, 1973."[3] Record vol. 1, at 2, 53.

The Equal Employment Opportunity Commission ("EEOC") moved to intervene in the action pursuant to sections 705(g)(6) and 706(f)(1) of title VII, 42 U.S.C. §§ 2000e–4(g)(6), –5(f)(1),[4] and Fed.R.Civ.P. 24(b).[5] Since the Commission had certified

2. Three of the four plaintiffs had previously filed charges of employment discrimination with the Equal Employment Opportunity Commission. The Commission determined, pursuant to § 706(f)(1) of title VII, 42 U.S.C. § 2000e–5(f)(1), that one of the complainants had "reasonable cause" to believe that Amoco had discriminated against her by failing to promote her because she is black. Although the Commission never issued a reasonable cause determination as to the other two complainants, the Commission eventually issued right-to-sue letters to each of the three. *See id.*

3. The original complaint also sought to join as class members all black applicants who had been denied employment by the New Orleans division, but the plaintiffs abandoned this effort in their amended complaint. Record vol. 1, at 53.

4. Section 705(g) provides in pertinent part:
 (g) The Commission shall have the power—
 . . . .
 (6) to intervene in a civil action brought under section 2000e–5 of this title by an aggrieved party against a respondent....
 Section 706(f)(1) provides in pertinent part:
 (f)(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the

Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

5. Rule 24(b) provides:
 (b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the

the case as being of "general public importance" pursuant to section 706(f)(1), the district court, acting through a magistrate, exercised its discretion to permit the EEOC to intervene. The Commission acknowledged that the scope of its participation would be "no greater than the scope of claims raised in Plaintiffs' complaint" and that it would not "depart from the 'field of litigation' established by the original parties," Record vol. 2, at 322—stipulations on which the order granting intervention was based, *id.* at 362.

At first, the Commission alleged in its amended complaint that it satisfied the class representation requirements of Rule 23 and should therefore be allowed to represent "itself and all blacks who are presently employed, may be employed, or who have been employed or sought employment with defendant ... at any [time] since December 11, 1973." Record vol. 2, at 412.[6] However, when the Supreme Court held in *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), that the EEOC is not subject to Rule 23 in seeking relief for a class of individuals allegedly aggrieved by unlawful employment discrimination, the Commission filed a second amended complaint deleting all allegations addressed to the usual class representation requirements. The Commission nonetheless continued to seek classwide relief, alleging, as it had from the start, that Amoco was engaging in discriminatory employment practices in promotion, compensation, and job assignment.

Meanwhile, the district court had never certified the main plaintiffs themselves as class representatives. After a hearing on the issue, the court provisionally denied the plaintiffs' motion, preserving their right to renew the request with the support of additional evidence at a later date. Record vol. 8, at 2090–97. The district court simultaneously held that the Commission could not seek relief for the proposed class, stating that the requirements of Rule 23(a) had not been satisfied and that *General Telephone*'s class action holding applies only when the EEOC has brought an action in its own name, not when it intervenes in a private suit. *Id.* at 2095.

Thus limited, the Commission nonetheless sought to discover the birthdates and sexes of Amoco employees already identified as having held jobs encompassed within the proposed class. According to the Commission, the age and sex data was needed to conduct a multiple regression analysis of Amoco's workforce even though the plaintiffs alleged only race discrimination. Over the defendant's objection, the district court granted the Commission's motion to compel, but at the same time granted Amoco's motion for a protective order restricting the use of the data solely to this case absent a written order from the court.

The private plaintiffs and Amoco eventually reached a settlement, and upon their joint motion, the district court dismissed the entire action with prejudice. For its part, the Commission was understandably displeased with the nullification of what was by now five and one-half years of agency involvement as a party to the suit. The agency therefore filed a motion to reconsider the dismissal of its claims. The district court, however, was unswayed. In denying the Commission's motion, the court reiterated its prior ruling that the EEOC could not seek relief for the pro-

United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

6. Although the Commission initially alleged that Amoco also discriminated against black job applicants, it subsequently informed the court that, in accordance with the scope of the plaintiffs' suit, it would not pursue the issue of hiring discrimination. Record vol. 8, at 2030 n. 1; *id.* vol. 11, at 47.

posed class because the requirements of Rule 23 had not been met, and therefore held that since the private plaintiffs had settled their dispute with the defendant, no live controversy remained between the Commission and Amoco.

The Commission raises three points on appeal. First, the Commission argues that a permissive intervenor such as itself commands an independent jurisdictional base where the intervention is premised either on a conditional statutory right to intervene or on the intervenor's reliance on the same federal statute as that employed by the original plaintiff. On this view, the district court erred by dismissing the EEOC merely because the main plaintiffs had settled with the defendant. Second, the Commission contends that it is no more subject to Rule 23's class representation requirements when it intervenes in a private title VII action than when it brings suit in its own name. According to the Commission, the district court should not have denied it the status of a class representative in light of the Court's decision in *General Telephone*. Finally, the Commission asserts that the trial court's protective order restricting its use of the age and sex data unduly hampers the agency's ability to enforce the Act and to comply with its interagency obligations.

We hold that the Commission can maintain suit as a class representative but that the district court's protective order was not an abuse of discretion.

## I

This is a case about justiciability. The district court held that the main plaintiffs' settlement deprived the EEOC as an intervenor of its case or controversy against the defendant employer.[7] We perceive two hamartial theories in support of this result. It could be argued first that this circuit's law of permissive intervention bottoms a district court's subject matter jurisdiction on the claims of the original plaintiffs, without whom the intervenor could not have intervened and absent whom this "vicarious" party must depart. In addition, it could somewhat more plausibly be asserted that the EEOC—a permissive intervenor whose conditional power to intervene has its source in federal law—is limited by its enabling legislation to representing only its own interests and those of the private plaintiffs. This second theory would have us affirm the district court on the ground that the EEOC has satisfied neither (A) title VII's preconditions to a suit brought in the Commission's own name, nor (B) Rule 23's class action requirements, which, although inapplicable where the EEOC files a direct action, are applicable where the EEOC merely intervenes in a private suit. On this view, the EEOC is allowed by statute to intervene solely for the purpose of facilitating the adjudication of claims between the private litigants—a role akin to that of an amicus curiae, whose asserted expertise and familiarity with a given area of law enable it to assist the court in reaching a more correct (and perhaps even just) decision. In essence, this notion of intervenor qua judicial appendage focuses less on the premises of permissive intervention in general and more on the intervenor's statutory authority to intervene.

We will address each of these arguments in turn.

### A. Unsettling Bedfellows: The Permissive Intervenor and the Reluctant Defendant

As noted, the district court allowed the EEOC to intervene pursuant to sections 705(g)(6) and 706(f)(1) of title VII, 42 U.S.C. §§ 2000e–4(g)(6), –5(f)(1), as well as under Rule 24(b). We confront the nature of this statutory authority in Parts B and C below. For the moment, we briefly consider whether the procedural tool of party inter-

---

**7.** In dismissing the Commission, the district court did not exercise its discretion pursuant to Rule 24(b) but instead ruled as a matter of law that the EEOC no longer had a "live controversy" with the defendant. We therefore pretermit deciding the circumstances under which the dismissal of a permissive intervenor such as the EEOC might be construed as an abuse of trial court discretion.

vention enables a district court to retain jurisdiction over the claims of a permissive intervenor once those of the original plaintiffs have been dismissed.

 At the outset, it is essential not to conflate what is required for a permissive intervenor to enter an action and what may be required for that intervenor to remain before the court. The two situations are not inherently congruent, the permissive intervenor falling somewhere in the gray area between spectator and participant. It is well-established, for example, that a party must have "independent jurisdictional grounds" to intervene permissively under Rule 24(b). *E.g., Hunt Tool Co. v. Moore, Inc.,* 212 F.2d 685, 688 (5th Cir.1954). *See generally* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1917, at 592 (1972). Generally, these grounds exist where, as here, the intervenor relies on having satisfied a conditional statutory right to intervene. However, the intervenor's mere presence in an action does not clothe it with the status of an original party. To be sure, there are some senses in which an "intervenor is treated as if he were an original party and has equal standing with the original parties." *Id.* § 1920, at 611; *see Donovan v. Oil, Chemical, & Atomic Workers International Union,* 718 F.2d 1341, 1351 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 24.17[1], at 24–185 to –186 (2d ed. 1985). The permissive intervenor can, among other things, move to dismiss the proceeding and can challenge the subject matter jurisdiction of the district court. *Id.* ¶ 24.16[2], [4]. But these participatory rights remain subject to the intervenor's threshold dependency on the original parties' claims, for it is equally well-settled that "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit." *Kendrick v. Kendrick,* 16 F.2d 744, 745 (5th Cir.1926), *cert. denied,* 273 U.S. 758, 47 S.Ct. 472, 71 L.Ed. 877 (1927), *quoted in Truvillion v. King's Daughters Hospital,* 614 F.2d 520, 526 (5th Cir.1980); *accord*

*Simmons v. ICC,* 716 F.2d 40, 46 (D.C.Cir. 1983); *see also Non Commissioned Officers Association of the United States v. Army Times Publishing Co.,* 637 F.2d 372, 373 (per curiam), *modified on other grounds,* 650 F.2d 83 (5th Cir.1981) (per curiam). It is therefore unclear whether an intervenor can broaden the scope of a litigation by asserting additional claims; to the extent it can, the district court has a concomitant prerogative—as an outgrowth of its discretionary power to withhold permission altogether—to condition the intervention so as to minimize delay and not prejudice the existing parties. *See, e.g., National Organization for Women, Inc. (NOW), Saint Paul Chapter v. Minnesota Mining & Manufacturing Co.,* 73 F.R.D. 467, 471–72 (D.Minn.1977).

 Although an intervenor's entrance does not in all respects guarantee it the right to do that which an original party could have done, a permissive intervenor need not always abandon its own claims merely because the main plaintiffs have dropped out. Thus, in the class action context, the fact that a case becomes moot as to the named plaintiffs does not necessarily deaden the controversy as to the remaining class members. *Sosna v. Iowa,* 419 U.S. 393, 399–401, 95 S.Ct. 553, 557–558, 42 L.Ed.2d 532 (1975); *see also United States v. McDonald,* 432 U.S. 385, 394–96, 97 S.Ct. 2464, 2469–71, 53 L.Ed.2d 423 (1977) (holding that putative class member's post-judgment motion to intervene was timely filed). Even absent class certification, the Supreme Court has held that where the original plaintiffs' claims have become moot, the United States can sustain a lawsuit where it has intervened pursuant to a statute entitling it to "the same relief as if it had instituted the action." *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 430–31, 96 S.Ct. 2697, 2702, 49 L.Ed.2d 599 (1976). Consistent with this approach, district courts have the "discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor." *Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir.1965). In-

deed, the Third Circuit has held under Fed. R.App.P. 15(d) that an intervenor seeking review of an administrative rulemaking can continue to litigate after the original party has dismissed its petition—even though the intervenor has waited beyond the statutory period within which it could have filed its own petition for review. *United States Steel Corp. v. EPA*, 614 F.2d 843, 845–46 (3d Cir.1979), *cited with approval in Oil, Chemical, & Atomic Workers*, 718 F.2d 1341 at 1351, 1352 (5th Cir.1983). Similarly, we have held that private intervenors can maintain suit under title VII against their employer even though the original plaintiffs have settled their claims. *Wheeler v. American Home Products Corp. (Boyle-Midway Division)*, 563 F.2d 1233, 1237–40 (5th Cir.1977). The law of this circuit is that there are circumstances in which an intervenor can continue to litigate after dismissal of the party that originated the action. *Id.; Magdoff v. Saphin Television & Appliance, Inc.*, 228 F.2d 214, 215 (5th Cir.1955) (per curiam); *Hunt Tool Co.*, 212 F.2d at 688; *accord Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1366–67 (11th Cir.1984); *McKay v. Heyison*, 614 F.2d 899, 906–08 (3d Cir.1980); *Alabama Electric Cooperative, Inc. v. United States*, 574 F.Supp. 27, 31 n. 8 (M.D.Ala.1983); *EEOC v. International Brotherhood of Electrical Workers*, 506 F.Supp. 480, 483 (D.Mass. 1981); *Kruse v. Zenith Radio Corp.*, 82 F.R.D. 66, 69 (W.D.Pa.1979); *see Oil, Chemical, & Atomic Workers*, 718 F.2d at 1351.

Our task is to determine whether these circumstances exist here.

## B. Illusory Pitfalls and Commission Intervention

 The EEOC's authority to intervene in a private lawsuit is set forth in sections 705(g)(6) and 706(f)(1) of title VII, 42 U.S.C. §§ 2000e–4(g)(6), –5(f)(1). The former provision is no more than a boilerplate clause of empowerment; it grants the Commission the ability to intervene.[8] The method of intervention appears in section 706(f)(1), which states, "Upon timely application, the court may, in its discretion, permit the Commission ... to intervene in [a] civil action upon certification that the case is of general public importance." *Id.* § 2000e–5(f)(1). There are thus three prerequisites to EEOC intervention: certification that the case is of general public importance, timely application, and permission of the district court. In this case, all three conditions were met, and the Commission was therefore properly before the court.

Appellee nonetheless argues that the Commission's intervention authority ends when the main plaintiffs decide to settle their claims. Focusing on the language in section 706(f)(1) that prescribes when the EEOC is allowed to institute suit in its own name,[9] Amoco observes that the Commission, by not having investigated, found reasonable cause to sue, or attempted to conciliate, lacks the statutory authority to maintain a direct action.[10] *See Truvillion*

8. *See* note 4 *supra.*

9. *See* note 4 *supra.*

10. While it appears that the Commission may have satisfied the statutory prerequisites to filing its own action by investigating, finding reasonable cause, and possibly attempting to conciliate the complaint of at least one named plaintiff, *see* Record vol. 3, at 703–04; *id.* vol. 9, at 2231–34, the issue is not beyond dispute, *see id.* vol. 3 at 702, and the district court never considered the question. Premising continued jurisdiction on the EEOC's satisfaction of its direct action prerequisites would raise a host of concerns that have not been fully addressed either by the court below or by the parties on appeal. For example, it is unclear whether the

EEOC attempted to conciliate with regard to all claims of employment discrimination raised by the instant litigation, and if not, whether such attempts are required by title VII. *See, e.g., Wright v. Olin Corp.*, 697 F.2d 1172, 1176–79 (4th Cir.1982). It is also difficult to glean from the record whether the Commission's attempts were sufficiently industrious—an issue arguably placed in dispute by Amoco's contention that the EEOC did not seek conciliation beyond an initial overture. *Cf. EEOC v. Pet, Inc., Funsten Nut Div.*, 612 F.2d 1001, 1002 (5th Cir.1980) (per curiam) (holding that EEOC efforts to conciliate were not conducted with sufficient good faith). In light of these concerns, we do not decide whether the Commission's ability to have

*v. King's Daughters Hospital,* 614 F.2d 520, 524–25 (5th Cir.1980); 42 U.S.C. § 2000e–5(b). Hence, the argument runs, if we do not read title VII to mandate the dismissal of the Commission in this case, we will have effectively allowed the Commission to maintain a direct action by satisfying only the different and less demanding prerequisites to intervention. This result, we are told, Congress could not have intended.

Appellee's reasoning has all the appeal of a spacious syllogism. Congress wants limited intervention, this attempt breaks the limit, therefore Congress doesn't want this type of intervention. Title VII, however, does not evince the major premise: neither the language of the statute nor its legislative history speaks directly to the scope of the EEOC's authority as an intervenor to maintain suit once the original plaintiffs have settled. Admittedly, section 706(f)(1) does create a temporal pecking order for agency action in that the EEOC's first options upon receiving a complaint are either to seek conciliation and possibly bring a direct action, or to issue a right-to-sue notice to the claimant. But the fact that the Commission's ability to intervene does not arise until after these other steps have been taken does not indicate congressional disfavor of Commission intervention to enforce title VII. Indeed, it could be argued that the requisite certificate of public importance—certainly less demanding than a direct action's formal attempt to conciliate—suggests greater sympathy for Commission intervention than for direct suit. It seems that if we are to ascertain the bounds of EEOC intervention, we must look to the purpose and logic of the statute as a whole.

When it amended the Civil Rights Act of 1964 in 1972, Congress's chief goal with regard to the EEOC was to increase the Commission's powers of enforcement.[11] Prior to that time, the Commission had been vested only with the authority to seek conciliation—a situation acknowledged to be a serious deficiency in the effort to eliminate employment discrimination.[12] Congress therefore granted the EEOC the conditional right to invoke the compensatory and injunctive powers of the federal courts directly.[13] If the Commission has notified the implicated employer, investigated the claim, found reasonable cause to sue, and unsuccessfully attempted to conciliate, the agency can bring suit in its own name. Alternatively, if the Commission views a complaint to be unworthy of a reasonable cause determination or chooses not to file suit directly, it can issue a right-to-sue letter to the claimant without sacrificing the administrative role. Upon concluding that a private title VII suit is important, the Commission need only say so to intervene. 42 U.S.C. § 2000e–5(f)(1).

Conciliation clearly remains the preferred method of obtaining compliance with the Act; litigation is available only as a last resort.[14] Both the direct-action and inter-

---

brought suit itself would be an alternative ground upon which to remand the present case.

11. S.Rep. No. 415, 92d Cong., 1st Sess. 1, 3–5 (1971) [hereinafter *Senate Report*], *reprinted in Legislative History of the Equal Employment Opportunity Act of 1972*, at 410, 413–17 (1972) [hereinafter *Legislative History*]; H.R.Rep. No. 238, 92d Cong., 1st Sess., 3–5 (1971) [hereinafter *House Report*], *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2139–41.

12. *Senate Report, supra* note 11, at 17, *reprinted in* Legislative History, *supra,* at 426; *House Report, supra* note 11, at 8, *reprinted in* 1972 U.S. Code Cong. & Ad.News at 2143–44.

13. In allowing the EEOC to resort to the courts, Congress stopped short of conferring cease-and-desist authority in the Commission itself. *See*

*Legislative History, supra* note 11, at 1521–57, 1767–68.

14. *Conference Report,* S.Rep. No. 681, 92d Cong., 2d Sess. 17–18 [hereinafter *Senate Conference Report*], *reprinted in* 1972 U.S.Code Cong. & Ad.News, 2179, 2182 *and Legislative History, supra* note 11, at 1815–16; *Conference Report,* H.R.Rep. No. 899, 92d Cong., 2d Sess. 17–18 [hereinafter *House Conference Report*], *reprinted in* 1972 U.S.Code Cong. & Ad.News 2179, 2182 *and Legislative History, supra* note 11, at 1837–38; *Legislative History, supra* note 11, at 1770, 1772 (section-by-section analysis submitted by Sen. Williams, Feb. 22, 1972); *see Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).

vention scenarios contain the possibility of conciliation without resort to judicial compulsion. The main procedural prerequisite to a suit filed by the EEOC is a good-faith attempt by the Commission to conciliate. Similarly, if the EEOC chooses not to pursue an action itself and instead intervenes, section 706(f)(1) provides that a district court may, in its discretion, stay a private action for up to sixty days pending the outcome of Commission efforts to conciliate.[15]

This scheme sets the backdrop against which to consider whether an intervening Commission bereft of original plaintiffs lacks the authorization to continue suit absent compliance with the statute's direct action prerequisites. These prerequisites were concocted not as elixirs of EEOC power, but as procedural devices designed to shield employers, employees, courts, and the Commission from litigating employment grievances when unnecessary to effectuate the purposes of title VII. *Johnson v. Nekoosa-Edwards Paper Co.*, 558 F.2d 841, 847–48 (8th Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 394, 54 L.Ed.2d 276 (1977). The steps of the statute are steps of economy. It would defy reason to require compliance with procedural prerequisites whose raison d'etre—namely, the desire to avoid premature litigation—is absent. Where the parties are already in court pursuant the statutory scheme, the day for complying with the calisthentics of an alternative route has come and gone.

The present case is illustrative. On appellee's view, the Commission, having devoted the resources of five and one-half years to adjudicating its own claims of employment discrimination against Amoco, would be returned to square one. Viewed from the employer's perspective, it can hardly be said that Amoco is without notice of the charges upon which the Commission's claims are based, nor would a formalistic appeal to reinvestigation or to a redetermination of reasonable cause be sensible at this stage. In addition, assuming for the sake of argument that the Commission has not engaged in a good faith effort to conciliate,[16] we have already noted that section 706(f)(1) requires this effort primarily to avoid litigation—a goal that was no longer attainable when the defendant settled six and one-half years into the original plaintiffs' suit. To the extent conciliation remains a viable possibility, the statute still affords Amoco the right to request that the district court temporarily stay the action pending the outcome of the Commission's good faith efforts to conciliate. The intent of the statute remains fulfilled.

The situation closely resembles those in *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), and *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *Love*, an individual sought relief under title VII prior to the Act's 1972 amendments. Under what was then section 706(b) (current version at 42 U.S.C. § 2000e-5(c)), a claimant could not file charges with the EEOC prior to having exhausted state remedies. Love, however, had filed his claim with the EEOC prior to resolution by the state employment commission, the EEOC had referred the claim back to the state, and the state had waived its opportunity to take further action. Without any refiling by Love, the EEOC found probable cause to believe the charges were true and unsuc-

---

**15.** Section 706(f)(1)'s temporary stay provision reflects Congress's desire to accommodate, on the one hand, the private plaintiff's interest in seeking prompt redress over the EEOC issues a right-to-sue notice with, on the other hand, the preferred method of agency conciliation. *See House Report, supra* note 11, at 12–13, *reprinted in* 1972 U.S.Code Cong. & Ad.News at 2148.

**16.** We disagree with appellee's assertion that our result today will "permit the Commission to circumvent at its whim" the requirements of

§ 706(f)(1). *See Brief for Appellee* at 24. The EEOC's right to intervene in private title VII actions is conditioned on its first obtaining the permission of the district court. The record in this case is devoid of any suggestion that the Commission has attempted to abuse its authority to intervene, and should such a situation arise, the district court retains the discretion not to allow intervention where it would "unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b).

cessfully attempted to conciliate, whereupon Love brought suit. 404 U.S. at 523–25, 92 S.Ct. at 617–18.

Responding to the argument that the complaint should be dismissed because the private plaintiff had failed to comply with the procedural prerequisites of the statute, the Supreme Court held that

> the filing procedure followed here fully complied with the intent of the Act.... We see no reason why further action by the aggrieved party should be required. The procedure complies with the purpose both of § 706(b), to give state agencies a prior opportunity to consider discrimination complaints, and of § 706(d) [ (current version at 42 U.S.C. § 2000e–5(e)) ], to ensure expedition in the filing and handling of those complaints. The respondent makes no showing of prejudice to its interests. To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality.

*Id.* at 525–26, 92 S.Ct. at 618–19 (footnotes omitted); *see also Williams v. Washington Metropolitan Area Transit Authority,* 721 F.2d 1412, 1418 & n. 12 (D.C.Cir.1983) (per curiam); *Deyo v. City of Deer Park,* 664 F.2d 518, 522–23 (5th Cir.1981); *Gamble v. Birmingham Southern Railroad Co.,* 514 F.2d 678, 688–89 & n. 6 (5th Cir.1975) (decrying any "needless procedural barrier" to application of title VII); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460–61 (5th Cir.1970) (same).[17] More recently, in *Zipes,* the Court held under sections 706(e) and (f) that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393, 102

S.Ct. at 1132 (footnote omitted); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 2395 n. 3, 76 L.Ed.2d 628 (1983). In so holding, the Court "honor[ed] the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* 455 U.S. at 398, 102 S.Ct. at 1135.

The import of these cases is clear: characterizing a statutory provision to be procedural rather than jurisdictional denotes an issue not of article III power, but of legislative and judicial method. *See McKee v. McDonnell Douglas Technical Services Co.,* 700 F.2d 260, 263–65 (5th Cir.1983). Where a provision proves to be merely a condition precedent to bringing suit instead of a source of judicial power, the courts can, given the appropriate circumstances, equitably modify their application of the statutory terms. Determining whether the circumstances are "appropriate" in turn depends on the purpose the provision is intended to serve.

Consistent with the Supreme Court's discussion in *Love* and *Zipes,* we have treated section 706(f)(1)'s prerequisites as "procedural" rather than "jurisdictional" in nature. In *Truvillion v. King's Daughters Hospital,* 614 F.2d 520 (5th Cir.1980), we considered the res judicata effect of a prior judgment on a plaintiff's title VII claim. In considering whether the prior judgment had been on the merits for purposes of barring the second suit, we stated that "[t]he requirements of E.E.O.C.'s notice to the respondent and a good faith investigation by the E.E.O.C. in a loose sense might be treated as jurisdictional. They are, however, nothing more than procedural prerequisites to the court's determination of the substantive issues." *Id.* at 524; *see also Nilsen v. City of Moss Point,* 674 F.2d 379, 383–84 (5th Cir.1982).[18] Similarly, in *Pin-*

---

17. In amending the Act later that year, Congress expressly approved of the Court's interpretation. *Senate Conference Report, supra* note 14, at 17, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2179, 2181 *and Legislative History, supra* note 11, at 1815; *House Conference Report, supra* note 14, at 17, *reprinted in* 1972 U.S.Code Cong.

& Ad.News 2179, 2181 *and Legislative History, supra* note 11, at 1837.

18. In *Truvillion,* we held in the alternative that even if the prerequisites were characterized as "jurisdictional," they would not fall within Rule 41(b)'s definition of "adjudication upon the mer-

*kard v. Pullman-Standard*, 678 F.2d 1211 (5th Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983), we applied *Zipes* to hold under section 706(f)(1), that "the receipt of a right-to-sue letter is not a jurisdictional prerequisite, but rather is a condition precedent subject to equitable modification." *Id.* at 1216; *accord Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093–95 (4th Cir.1982); *Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992, 1000–10 (11th Cir.1982).[19] Thus, while the failure to comply with a condition precedent usually means that a plaintiff cannot bring suit, *see, e.g., id.* at 1010; *Truvillion*, 614 F.2d at 525, 526; *Cutliff v. Greyhound Lines, Inc.*, 558 F.2d 803, 806–07 (5th Cir.1977), it does not mean that the district court lacks subject matter jurisdiction if the case is otherwise before it.

Viewed as a matter of procedural compliance, our concern in the present case is not whether the district court was *empowered* to hear the EEOC's claims, but rather is *why* Congress imposed these prerequisites to Commission enforcement through the judiciary. It became procedurally proper for the court below to entertain the EEOC's claims as of the moment the Commission certified the case as being of general public importance and timely filed its motion to intervene. These acts conferred on the district court the ability to grant intervenor status to the Commission under the statute directly, in consequence of the Commission's conditional statutory right to intervene under Rule 24(b)(1), and in light of Rule 24(b)'s provision for permissive intervention by the agency charged with administering a federal statute relied on by a litigant. However, unlike where a district court can, for example, be deprived of its diversity jurisdiction where the parties do not remain completely diverse throughout a litigation, the Commission's capacity to be in federal court flows from the agency's authority to enforce the Act, *General Telephone Co. v. EEOC*, 446 U.S. 318, 324, 100 S.Ct. 1698, 1703, 64 L.Ed.2d 319 (1980), and from section 706(f)(3)'s creation of federal jurisdiction over all "actions brought under" title VII, 42 U.S.C. § 2000e–5(f)(3). *See Pinkard*, 678 F.2d at 1216–17 (distinguishing "the relevant jurisdictional provision," section 706(f)(3), from section 706(f)(1)'s procedural prerequisites); *Seaboard Coast Line*, 678 F.2d at 1001–02 (same).[20] Where a solid basis for jurisdiction exists, the Commission should not be

---

its" and would therefore lack res judicata effect. 614 F.2d at 524. We based this view on the Supreme Court's decision in *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), which held that "jurisdictional" dismissals under Rule 41(b) include "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite the Court's going forward to determine the merits of his substantive claim." *Id.* at 285, 81 S.Ct. at 545.

Because of the obvious effects that accompany a dismissal with prejudice, the line between on-the-merits adjudications and those based on jurisdictional defects must lean towards a broader definition of "jurisdictional" under Rule 41(b). *See id.* It is therefore not inconsistent to characterize as "jurisdictional" for res judicata purposes the same statutory prerequisites that we today characterize as "procedural." *See Zipes*, 455 U.S. at 393, 102 S.Ct. at 1132; *Love*, 404 U.S. at 525–26, 92 S.Ct. at 618–19.

**19.** *See Crawford v. United States Steel Corp.*, 660 F.2d 663, 666 (5th Cir.1981); *Clanton v. Orleans Parish School Board*, 649 F.2d 1084, 1094 n. 13 (5th Cir.1981); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir.1981); *cf. Stearns v.*

*Consolidated Management, Inc.*, 747 F.2d 1105, 1110–11 (7th Cir.1984) (treating filing requirements under Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, as conditions precedent under *Zipes* ); *Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1012 (4th Cir.1983) (same), *cert. denied*, — U.S. —, 104 S.Ct. 1600, 2678, 80 L.Ed.2d 130 (1984); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc) (same).

**20.** The present case thus differs from *Ruotolo v. Ruotolo*, 572 F.2d 336 (1st Cir.1978), where the First Circuit held that the United States could not, as an intervenor, appeal a bankruptcy creditor's conflict-of-interest claims against the debtor's counsel once the claims had been withdrawn and the situation mooted. In *Ruotolo*, the government had intervened pursuant to 28 U.S.C. § 2403, which accords the United States a right to intervene when the constitutionality of a federal statute affecting the public interest is at issue, as well as under Rule 24(b)'s provision for permissive intervention when a party relies on a statute administered by a federal agency. The First Circuit dismissed the appeal, noting that

relegated to carrying out a view of the statute that is perhaps plausible in light of Congress's choice of words, but that is certainly inconsistent with any reasonable interpretation of the scheme as a whole and with the way the Commission operates. Section 706(f)(1) dictates only the method of getting there, and as we have discussed, nothing in the statute suggests that a valid intervention by the Commission, once present, need be dispelled; indeed, the scheme as a whole compels the reverse.[21] Language can be either a tool or a chain, and we like to think Congress opted for the former.

 We are thus faced with a Commission, properly before the district court *ab initio* and *in perpetuum*, charged with effectuating the salutary purposes of title VII. Confronted with a similar situation in *Wheeler v. American Home Products Corp. (Boyle-Midway Division)*, 563 F.2d 1233 (5th Cir.1977), we held that eight private intervenors could continue to press their title VII claims after the original plaintiffs had settled with the defendants. *Id.* at 1237–38; *accord Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1366 (11th Cir.1984). It would be anomalous to hold now that the EEOC has less power to pursue its claims as an intervenor than did the eight individuals in *Wheeler*.[22] As the chief sponsor of the 1972 amendments to the Act noted, "The procedures set forth in [section

the desirability of an advisory opinion is not a substitute for justiciability. To be sure, a chief purpose behind intervention statutes such as § 2403 and Rule 24(b) is to enable the United States or one of its agencies to intervene to prevent constitutional or legal issues of potential significance from being decided with only limited input from private litigants, who may care little or nothing about the principles at stake. There is, however, a difference between permitting the United States to play an active role during the pendency of a private litigation, and permitting it to go forward with the litigation in its own right after the private parties have composed their differences. *To do the latter, we think the Government must possess some independent basis as a party apart from its status as intervenor under the two statutes in question.* The United States is here able to point to no independent source of authority permitting it to sue on behalf of itself or on behalf of others, in order to enforce the provisions of Section 39b of the Bankruptcy Act[, 11 U.S.C. § 67(b)]. 572 F.2d at 338–39 (emphasis added) (citations and footnote omitted). By contrast, it is clear in the present case that the EEOC possessed in title VII the independent source of authority that the government lacked in *Ruotolo. See General Telephone*, 446 U.S. at 324, 100 S.Ct. at 1703; *cf. SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 458–60, 60 S.Ct. 1044, 1054–55, 84 L.Ed. 1293 (1940) (holding that the Securities and Exchange Commission "has a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it through [permissive] intervention to prevent reorganizations [in bankruptcy]").

21. We recognize that our holding is in tension with that of the Sixth Circuit in *Horn v. Eltra Corp.*, 686 F.2d 439 (6th Cir.1982). In *Horn*, the district court had revoked the EEOC's status as a permissive intervenor. While the Commission's appeal of the revocation order was pending, the original title VII plaintiff settled with the defendant employer. The Sixth Circuit held that the EEOC lacked both an independent basis of jurisdiction and class certification, and that the settlement and dismissal of Horn's claim therefore rendered the Commission's appeal moot.

In what we hope is a perspicacious effort to blunt the horns of a dilemma, we do not read *Horn* to be on all fours with the present case. The Sixth Circuit did not affirm the district court's dismissal, which, judging from the panel opinion, could have been based either on an exercise of the court's discretion under Rule 24(b) or on a ruling as a matter of law under title VII. Rather, the court of appeals dismissed the appeal as moot, thereby indicating that the court viewed the Commission as attempting to intervene in a nonexistent suit rather than as trying to maintain its claims as a valid party to the action. Indeed, its holding was based almost entirely on cases involving attempts to intervene where some or all of the original plaintiffs' claims had already been dismissed, *see id.* at 440–41, and at least one district court of that circuit has so interpreted the holding in *Horn, see EEOC v. Dayton Tire & Rubber Co.*, 573 F.Supp. 782, 786 n. 5 (S.D.Ohio 1983). Thus, while we would agree with the general proposition that a party cannot intervene in an action that no longer exists, we need not address how we might approach the situation presented in *Horn* in light of the case before us.

22. This view of the permissible longevity of EEOC intervention is also consistent with the Supreme Court's decision in *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). In *Spangler*, the United States had intervened as of right pursuant to title IX, § 902, of the Civil Rights Act of 1964, 42 U.S.C. § 2000h–2, which provides that "the Unit-

706(f) ] are intended to place the primary responsibility for enforcing violations of Title VII in the Commission and to shift them from the private plaintiff...."[23] We hold in light of this goal that the statute enables the EEOC to maintain suit at the sound discretion of the district court. Limited, then, by the scope of its complaint in intervention, the Commission should not have been dismissed as a matter of law upon the original plaintiffs' farewell.

## C. EEOC Enforcement and the Nonapplicability of Rule 23

As an alternative reason for dismissing the EEOC, the district court offered the Commission's noncompliance with the class action requirements of Rule 23. Since neither the original plaintiffs nor the Commission had been certified as class representatives,[24] the district court held that the Commission, proceeding solely in its own name as an intervenor, lacked a case or controversy with the defendant employer. This result is inconsistent not only with our holding in Part B above but also with that of the Supreme Court in *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

In deciding above that title VII imbues the Commission with the authority to continue litigating after the main plaintiffs have settled out of a lawsuit, we reasoned largely from the premise that the EEOC exists to represent the public interest in equal employment opportunity.[25] The Commission's method of representation comprises both conciliation and adjudication. Where the latter becomes necessary, whether by direct suit or by intervention, the Commission acts not for itself but for the people who filed complaints with the agency, for similarly situated individuals, and in the general public interest. The EEOC's ability to maintain suit "in its own name" has no meaning apart from whatever relief the Commission obtains for employees who have been treated as less than equal.

■ And so the Supreme Court has held. In *General Telephone*, the Court read title VII to dispense with Rule 23's class action requirements where the EEOC institutes suit pursuant to section 706. The Court observed, "The EEOC is not merely a proxy for the victims of discrimination[,] and ... the EEOC's enforcement suits should not be considered representative actions subject to Rule 23.... When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326, 100 S.Ct. at 1704 (citations omit-

---

ed States shall be entitled to the same relief as if it had instituted the action." Acknowledging that "the meaning of this provision is somewhat ambiguous," 427 U.S. at 430, 96 S.Ct. at 2702, the Court held that "the statute is properly read to authorize the United States to continue as a party plaintiff in this action, despite the disappearance of the original plaintiffs and the absence of any class certification, so long as such participation serves the statutory purpose, and that the presence of the United States as a party ensures that this case is not moot." *Id.* at 431, 96 S.Ct. at 2702. While the absence of similar language in title VII obviously favors appellee's cause under the maxim *expressio unius est exclusio alterius, see Horn v. Eltra Corp.*, 686 F.2d 439, 441–42 (6th Cir.1982), our analysis of the EEOC's enforcement authority convinces us that this tension is not dispositive—especially given the dearth of legislative history surrounding § 902 and the fact that, as in *Spangler*, the EEOC's "participation serves the statutory purpose" and "ensures that this case is not moot."

**23.** *Legislative History, supra* note 11, at 1772 (section-by-section analysis submitted by Sen. Williams, Feb. 22, 1972).

**24.** Although the Commission initially filed an amended complaint alleging that it satisfied the requirements of Rule 23, the Commission subsequently withdrew these allegations when the Supreme Court held in *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), that the EEOC can seek classwide relief absent formal compliance with Rule 23. *Id.* at 333–34, 100 S.Ct. at 1707–08. The Commission did, however, continue to seek relief on behalf of the class of individuals aggrieved by the discriminatory employment practices alleged in the original plaintiffs' complaint.

**25.** *See e.g., Georgia Power Co. v. EEOC,* 412 F.2d 462, 468 (5th Cir.1969) ("Discrimination on the basis of race or sex is *class discrimination.*"), *quoted in Burns v. Thiokol Chemical Corp.,* 483 F.2d 300, 306 (5th Cir.1973).

ted). In light of this rationale, we see no reason not to apply the holding of *General Telephone* to cases where the Commission seeks to enforce the Act by intervening rather than by bringing a direct action. *Accord United Telecommunications, Inc. v. Saffels*, 741 F.2d 312, 314 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985); *see Johnson v. Nekoosa-Edwards Paper Co.*, 558 F.2d 841, 844–45 (8th Cir.) (noting that EEOC can intervene upon a "broad basis, the class will in effect be represented, and the scope of relief available will be as broad as if the class had been certified"), *cert. denied*, 434 U.S. 920, 98 S.Ct. 394, 54 L.Ed.2d 276 (1977); *Fields v. Beech Aircraft Corp.*, 95 F.R.D. 1, 6 (D.Kan.1981); *Stuart v. Hewlett-Packard Co.*, 66 F.R.D. 73, 76–78 (E.D. Mich.1975).[26] The broad grant of agency authority on which the Court relied in *General Telephone, see* 446 U.S. at 324–25, 100 S.Ct. at 1703–04, applies by its terms to all EEOC enforcement efforts under section 706, *see* 42 U.S.C. § 2000e–5(a). Having validly intervened in a private title VII suit, the Commission is no more subject to Rule 23 than if it had filed the action as an original party plaintiff.[27] "[T]he Rule has no application to a § 706 suit." 446 U.S. at 324, 100 S.Ct. at 1703.

**26.** Although appellee relies for precedential support on *Horn v. Eltra Corp.*, 686 F.2d 439, 441 n. 1 (6th Cir.1982) (stating that *"General Telephone* is limited to EEOC actions brought in its own name and not ... to EEOC interventions in a private action"), the Sixth Circuit's statement was pure dictum, placed meekly in a note at the foot of a page.

**27.** The Commission's ability to maintain suit as a de facto class representative despite the absence of the original plaintiffs does not amount to an "expansion" of the suit beyond those claims asserted by either the Commission or the original plaintiffs themselves. The district court permitted the EEOC to intervene on the condition that the agency would not press claims outside the scope of the main plaintiffs' complaint. *See* note 6 *supra; cf. Benson v. Little Rock Hilton Inn*, 87 F.R.D. 447, 449 (E.D. Ark.1980). This condition did not, however, limit the scope of relief that is available whenever the EEOC seeks judicial enforcement under title VII. *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); 42 U.S.C. 2000e–5(a). The substantive basis for the Commission's interven-

## II

The final issue in this case raises the validity of a protective order covering age and sex data. The district court granted the Commission's motion to compel discovery of the data—which the Commission asserted was necessary to perform a multiple regression analysis of Amoco's employment practices—but at the same time restricted the Commission's use of the material to the present litigation under Rule 26(c).[28] The EEOC contends that adhering to the protective order would conflict with the agency's duty to enforce the Act should it wish to bring suit based on the age and sex data, and that the court's use-restriction further forces the Commission not to comply with an interagency agreement— entered into pursuant to section 715 of the Act, 42 U.S.C. § 2000e–14—to share information concerning employment discrimination with the Office of Federal Contract Compliance Programs. Consequently, the Commission argues that the district court abused its discretion in confining the data's use to this case. The Commission is mistaken.

■■■■■■ A party may generally do what it wants with material obtained through the

tion may have been circumscribed, but its remedial scope was not. *See Sobel v. Yeshiva University*, 438 F.Supp. 625, 628 (S.D.N.Y.1977); *Stuart v. Hewlett-Packard Co.*, 66 F.R.D. 73, 77–78 (E.D. Mich.1975).

**28.** The trial judge ruled orally that Amoco provide only the raw data and that they receive from the EEOC and the plaintiffs an absolute[,] unqualified guarantee that that information will not be dissiminated [sic] in any way, shape, or form to any other agency whatsoever without a written order of this Court[,] and only then upon proper motion and order of this Court[,] and that the information be in camera, that it be sealed[,] and that it be unavailable to any other agency or person or private source or any investigative groups whatsoever except the EEOC for the purposes limited to the EEOC's efforts to argue the applicability of that data in the case. Record vol. 11, at 51–52 (hearing transcript of Mar. 16, 1983); *see also id.* vol. 8, at 2095 (written order).

684

discovery process, as long as it wants to do something legal. *In re Halkin,* 598 F.2d 176, 188 (D.C.Cir.1979); *Essex Wire Corp. v. Eastern Electric Sales Co.,* 48 F.R.D. 308, 312 (E.D.Pa.1969); *Leonia Amusement Corp. v. Loew's, Inc.,* 18 F.R.D. 503, 508 (S.D.N.Y.1955). *But cf. Seattle Times Co. v. Rhinehart,* — U.S. —, 104 S.Ct. 2199, 2208–09, 81 L.Ed.2d 17 (1984) (holding that there is no absolute first amendment right to disseminate information obtained through pretrial discovery); *Greene v. Thalhimer's Department Store,* 93 F.R.D. 657, 661 (E.D.Va.1982) (limiting use of discovered material relating to EEOC conciliation efforts). The federal rules do not themselves limit the use of discovered documents or information. Rule 26(c) does, however, afford district courts the ability to impose limits. If the party from whom discovery is sought shows "good cause," the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained. *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *see* 8 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2035, 2036, at 264–65, 267–69 (1970); 4 J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.75 (1984).

Our role, though, is not to play district court.

[T]he standard of review of a decision of a trial court in a matter relating to discovery is whether the trial court abused its discretion in its decision. *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100 (5th Cir.1981); *Hastings v. North East Independent School District,* 615 F.2d 628 (5th Cir.1980). It is not the responsibility of this Court to say it would have chosen a different order, to substitute our judgment; it is rather our responsibility to decide whether the district court could have entered the order which it did. *Cf. Emerick v. Fenick*

*Industries, Inc.,* 539 F.2d 1379 (5th Cir.1976).

*Brown v. Arlen Management Corp.,* 663 F.2d 575, 580 (5th Cir.1981) (per curiam); *see Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982); *Sanders v. Shell Oil Co.,* 678 F.2d 614, 618 (5th Cir.1982). We must ask whether the district court abused its discretion in finding good cause to restrict the EEOC's use of the age and sex data.

Amoco argues on appeal, as it did below, that the Commission should not be permitted to utilize the discovery process in lieu of the investigative authority provided for in title VII. *See* 42 U.S.C. § 2000e–8. The EEOC argues in response that it has a statutory duty to ferret out employment discrimination, and that if the Commission becomes aware of discriminatory practices during the course of litigating an admittedly distinct claim of unequal treatment, it should not be constrained from using this information as a basis upon which to initiate further proceedings. Thus, the argument runs, the district court's protective order "places the Commission in the position of violating its statutory mandate to prevent and remedy employment discrimination whereever [sic] found." *Brief for Appellant* at 30.

■ Although we do not take issue with the breadth of the EEOC's warrant to enforce title VII, we disagree with the Commission's conclusion. We have long recognized that the scope of an EEOC civil action is as broad as "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970); *see also Walls v. Mississippi State Department of Public Welfare,* 730 F.2d 306, 317–18 (5th Cir.1983); *EEOC v. Brookhaven Bank & Trust Co.,* 614 F.2d 1022, 1025 (5th Cir.1980); *EEOC v. Occidental Life Insurance Co.,* 535 F.2d 533, 541–42 (9th Cir.1976), *aff'd,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *EEOC v. General Electric Co.,* 532 F.2d 359, 365 (4th Cir.1976); *EEOC v. Kimber-*

ly-Clark Corp., 511 F.2d 1352, 1363 (6th Cir.), cert. denied, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); EEOC v. McLean Trucking Co., 525 F.2d 1007, 1010 (6th Cir.1975); EEOC v. Huttig Sash & Door, 511 F.2d 453, 455 (5th Cir.1975). In title VII, however, Congress erected a specific system by which the Commission is to investigate charges of employment discrimination. See 42 U.S.C. §§ 2000e-5, -8.[29] There is nothing in the statute that authorizes, much less mandates, the Commission to act on material discovered while intervening in a private title VII suit.[30] It would certainly not be unreasonable for Congress to have intended that the Commission investigate as provided for in the statute rather than through the back door of discovery. See, EEOC v. Shell Oil Co., 466 U.S. 54, 104 S.Ct. 1621, 1627–37, 80 L.Ed.2d 41 (1984) (discussing relationship among charge, notice, and judicial enforcement provisions of title VII). Valley Industrial Services, Inc. v. EEOC, 570 F.Supp. 902, 906 (N.D.Cal.1983) (discussing Commission's investigative powers).

 Thus, absent a clear indication that Congress intended otherwise, we are unable to say that the district court abused its discretion by issuing a protective order in this case. Title VII does not require that the EEOC receive full use of material discovered as an intervenor, whether that use is further investigation, litigation, or interagency cooperation. See, e.g., Haykel v. G.F.L. Furniture Leasing Co., 76 F.R.D. 386, 391 (N.D.Ga.1976). An employer's interest in preserving the confidentiality of its records for some purposes is sufficient "good cause" where the Commission is not authorized to invade that privacy for all purposes.[31]

### III

It should go without saying that title VII merits the most generous of applications.[32] This has been and remains the tradition of civil rights litigation in the federal courts—a tradition of solicitude for those least able to conquer their inequality in the face of self-appointed superiors.

Cognizant of the disparities between litigants in employment discrimination suits, we have often characterized these suits as contemporary David and Goliath confronta-

---

29. The situation resembles that where a private plaintiff seeks to disclose protected discovery material to the government. Faced with such a request from a civil antitrust litigation, Judge Weinfeld once observed:

> The contention that the protective order should be lifted so as to enable plaintiffs to communicate the protected information to various governmental authorities in furtherance of the public interest is without substance. The governmental authorities, whether executive or congressional, if interested in obtaining the information, have the available means and power, subpoena and otherwise, to obtain or compel its production. The vindication of the public interest in the enforcement of the criminal laws rests with the Department of Justice and not with the plaintiffs who are asserting private antitrust claims.

Data Digests, Inc. v. Standard & Poor's Corp., 57 F.R.D. 42, 44 (S.D.N.Y.1972) (footnote omitted). But cf. Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 410–11 (N.D.N.Y.1973). Similarly, the EEOC, if sufficiently interested in the birthdates and genders of Amoco employees, can resort to its investigative authority under the Act. See 42 U.S.C. § 2000e–8.

30. We do not, of course, suggest the converse—namely, that the statute prohibits the Commission from acting on discovery material. Whether or not to issue a protective order remains for the discretion of the trial court.

31. We note in addition that the district court expressly reserved the power to rescind its order upon a party's application. This caveat suggests that the court might, if faced with a properly substantiated Commission request, release the discovered material to the EEOC for uses consistent with the agency's role under the statute.

32. As the Supreme Court stated in Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), "Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.'" Id. at 421, 95 S.Ct. at 2373 (quoting Legislative History, supra note 11, at 1773–74 (section-by-section analysis submitted by Sen. Williams, Feb. 22, 1972)); see also Griggs v. Duke Power Co., 401 U.S. 424, 429–30, 91 S.Ct. 849, 852–53, 28 L.Ed.2d 158 (1971).

**686**

tions.[33] Our mettle is best tested where, as in the present case, David's slingshot threatens to become Goliath's shield. When vested with the authority to eradicate unequal treatment in the workplace, a federal agency is entitled to exercise that authority to the limit. Congress created a scheme with a purpose, and neither means nor ends should ever lose sight of the other.

As we noted at the outset, this case raises a number of bedeviling complexities—complexities which have been well-explored by both employer and Commission on appeal. In essence, though, the employer's argument favors statutory form over substance, and in so doing loses sight of both congressional method and goal. Since title VII contemplates EEOC intervention in appropriate cases, we hold that, having properly intervened, the EEOC can maintain suit within the scope of the original plaintiffs' claims even after those plaintiffs have settled. Moreover, we hold that Rule 23's class action prerequisites are as inapplicable when the EEOC intervenes as when it brings a direct suit. However, given that the statute is not a carte blanche for agency investigation, we also hold that the district court did not abuse its discretion in restricting the Commission's use of discovered age and sex data to this litigation.

On balance,' this federal agency's resort to the courts has been sound.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

CLARK, Chief Judge, concurring specially:

I concur in Parts I–II, in the penultimate and ultimate paragraphs of Part III, and in the result reached by Judge Goldberg's opinion. The merits of the defendant's actions remain to be adjudicated. I do not see how it can be classed as a self-appointed superior. Furthermore, I do not consider the present litigation between a compe-

tently staffed, publicly funded government agency and the defendant to be properly characterized as a David and Goliath confrontation.

---

**33.** *See Chromcraft Corp. v. EEOC,* 465 F.2d 745, 748 (5th Cir.1972); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 467 (5th Cir.1970); *Pettway v.* *American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir.1969); *Jenkins v. United Gas Corp.,* 400 F.2d 28, 33 (5th Cir.1968).